## STATE OF CONNECTICUT *v.* RICHARD SALZ
### (9553)

DALY, FOTI and HEIMAN, Js.

Argued October 29, 1991—decision released January 28, 1992

*Rosemarie Paine,* certified legal intern, with whom were *Todd D. Fernow* and *Dennis Spector,* certified legal intern, and, on the brief, *Catherine Gallo,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom was *Michael Dearington,* state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).[1] The defendant claims (1) that the trial court incorrectly instructed the jury as to the meaning of recklessness, the mental state necessary for a conviction under § 53a-56 (a) (1), and (2) that there was not sufficient evidence of the defendant's awareness of and conscious disregard of a substantial and unjustifiable risk that death would result from his conduct to support his conviction. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant, a licensed electrician with thirty-one years experience, was asked to rewire his neighbor's kitchen. The neighbor agreed to pay the defendant $1200 for his services. The defendant was, among other things, to provide and install two baseboard heaters, one in the kitchen and the other in the basement. The defendant began the job in September of 1988, returning on three or four occasions over the next month to complete the job. On November 8, 1988, on his last visit, he installed the basement heater and connected it to the circuit breaker box and was paid $1000 for his services to date. The job was not yet completed and the neighbor expected the defendant to return to complete it. The defendant told his neighbor that both heaters he installed were operable.

The neighbor first used the basement heater for only one hour shortly before Christmas. On December 28, the basement heater was left on during the night. At about 1 a.m., the neighbor awoke and smelled smoke. He then discovered that there was a fire on the base-

---

[1] General Statutes § 53a-56 provides in pertinent part: "(a) A person is guilty of manslaughter in the second degree when (1) he recklessly causes the death of another person . . . ."

ment rug coming from the back of the heater installed by the defendant. Believing the fire was small, he initially went to the kitchen to get water to attempt to put out the fire himself. Upon his return, the basement was engulfed with flames. He then proceeded to the second floor to get his wife and two grandchildren out of the home. The neighbor, his wife and one of his grandchildren were all able to escape the fire, while one child remained in the home. Attempts to reenter the home were unsuccessful because the fire had spread to the second floor. Firefighters from the town of East Haven were unable to save the child. An autopsy revealed that the cause of the child's death was carbon monoxide inhalation.

At trial, the state presented several witnesses who testified about the cause of the fire and the fire code's requirements concerning electrical work. Frederick Brow, fire marshal of the town of East Haven, arrived at the scene of the fire at approximately 2 a.m. On the basis of his investigation, Brow concluded that the electric heater in the basement malfunctioned and caused the fire. Brow did not find any trace of an accelerant that would have caused a fire. He thus ruled out arson. There was also no evidence of cigarette smoking in the house or any type of damage indicating that the cause of the fire was a lit cigarette. Brow was unable to locate the remains of a lock nut on the cable connecting the heater to the circuit box. Upon learning that the defendant performed the electrical work, Brow tried to inspect the defendant's warehouse which contained his electrical supplies but was denied entry by the defendant. The defendant admitted that the heaters he installed were from his warehouse.

The state also called the assistant state building inspector, Lawrence Acquarulo, an electrical inspector, to testify as an expert witness. Acquarulo is responsible for inspecting all electrical installations to ensure

that they comply with the national electrical code. He testified that Connecticut law requires compliance with the national code, a set of minimum electrical requirements. Acquarulo noted that the defendant had been issued an inspector's license from the state of Connecticut and in the past had been the electrical inspector for the town of Wallingford. Acquarulo's investigation of the fire scene revealed several violations of the code that could have resulted in the heater's ignition.

Acquarulo stated that the defendant installed the basement heater beneath an electrical outlet. He felt that this location was in violation of the heater manufacturers' instructions. Acquarulo further testified that the basement heater was clearly stamped as being a 120 volt unit, yet it was wired to a 240 volt circuit. According to his testimony, a 120 volt heater generally has two wires completing the circuit. One wire is connected to the electrical wire through a circuit breaker and the other wire is connected to a ground or neutral terminal in the junction box. In this case, both wires had been spliced to power producing lines on the circuit breakers instead of having just one wire connected through a circuit breaker. Thus, 240 volts were brought to the heater.

Acquarulo further testified that the BX cable used to connect the heater to the circuit breaker was not secured with a lock nut. A lock nut fastens the metal clamps connecting the metal sheath encircling the electrical wire to the heater. The installation of the lock nut creates a grounding condition known as bonding which could have prevented a fire when the overheating occurred. The circuit breaker operates to terminate the electrical current if an excessive amount of current is being transmitted to a heater. There was also testimony that the heater's internal thermostat did not function properly. A working thermostat would have automatically turned the heater off once it began to overheat.

Other violations of the national code that Acquarulo noticed included the absence of a bar on the handle connecting the two circuit breakers. This bar enables both circuit breakers to trip whenever one breaker registers a fault. The installation of a bar is required if the wiring includes 240 volts. Another violation was the multiple splices of the wire through the circuit breaker panel. Acquarulo concluded his testimony by noting that many of these violations were uncommon and that he had never witnessed this many violations at one site.

Thomas Haynes also testified as an expert witness to the findings of his separate investigation of this fire. He agreed with Brow that the heater caused the fire and with Acquarulo concerning the many violations of the national electrical code by the defendant. He further testified about the thermal cutout discs in the heater. Thermal cutout discs are factory installed heat activated switches that trip and shut off power when an appliance overheats. According to Haynes' investigation, because the heater was improperly wired, the thermal discs failed to operate properly. Haynes testified that the defendant's failure to get a permit from the town building department also violated the state electrical code.

The defendant was the sole witness to testify for the defense. He first noted that he did the electrical work for his neighbor as a favor and that he received no profit from the job. He spoke of his extensive experience as an electrician, noting that he had installed and wired "tens of thousands of electrical baseboard heaters." He maintained that he correctly wired the heater on a 120 volt circuit rather than on a 240 volt circuit. He was sure of this because he remembered testing the heater twice after his installation. It was his testimony that if he had incorrectly wired the heater to a 240 volt circuit, the heater would immediately become very hot and make a humming noise. Because this did not occur,

he concluded that the heater was installed properly. The defendant also disputed the evidence about the absence of a lock nut, claiming that he had installed a lock nut on the heater. He also denied having made any of the splices that were observed by Aquarulo.

The defendant further asserted he had installed a "piggyback" circuit breaker to accommodate both heaters because the circuit panel was full. The circuit breaker box was admitted into evidence, however, and the piggyback breaker was not attached to it. The defendant claimed that someone must have tampered with his installation of the heater. The defendant acknowledged that the installed heaters were purchased at an auction at a substantial discount. He first testified that all the heaters he bought were new and in their original cartons. When evidence presented by the state indicated that the heaters had been previously used, he later admitted that not all the heaters were new. The defendant denied ever preventing Brow from inspecting his warehouse. The defendant claimed that he believed that homeowner was required to obtain the permit for the electrical work. He warned his neighbor that if the neighbor did not get a permit, the neighbor would be assuming full responsibility for the work.

I

The defendant first claims that the trial court incorrectly instructed the jury on the meaning of recklessness, as defined in General Statutes § 53a-3 (13),[2] in its instructions to the jury. The defendant contends that instead of defining recklessness, the court gave the statutory meaning of criminal negligence, thus reliev-

[2] General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

ing the state from having to prove that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk of death beyond a reasonable doubt as required by General Statutes § 53a-56. The concept of criminal negligence involves an actor's "fail[ure] to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists." General Statutes § 53a-3 (14). The defendant contends that the trial court's instructions allowed the jury to convict him of criminally negligent homicide, a lesser degree of homicide defined in General Statutes § 53a-58, rather than the charged crime of manslaughter in the second degree. At trial, the defendant neither objected to or took exception to the court's instructions on recklessness.

This claim is raised for the first time on appeal and the defendant seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), and *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). "*State* v. *Golding,* supra, establishes that a defendant cannot prevail on an unpreserved constitutional claim unless all four conditions are met, any one of which may be considered first."[3] *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d 880 (1991). According to the third prong of *Golding,* the defendant can prevail only if the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra, 240. The defend-

---

[3] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

ant has failed to establish that the court's instructions amounted to a constitutional violation that deprived him of a fair trial.

The trial court's instructions should give the jury "a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974). In its original charge, the court emphasized the definition of recklessness by reading the statutory definition twice to the jury. This stressed the importance of finding that the defendant was actually aware of and then consciously chose to disregard a substantial and unjustifiable risk. By stressing "He is aware of and consciously disregards . . ." the court correctly distinguished the difference between recklessness and the different mental state required for criminal negligence. The court repeated the statutory definition a third time when the jury asked for clarification of the meaning of recklessness. It is proper for the court when instructing the jury to read the statutory provision that is involved in the case. *State* v. *Criscuolo,* 159 Conn. 175, 177, 268 A.2d 374 (1970). The language of § 53a-3 (13), requiring for a "reckless" act that the defendant consciously realize a substantial and unjustifiable risk, was capable of being understood by the average juror so that the reading of the exact language did not mislead the jury and therefore was proper. *State* v. *Criscuolo,* supra.

General Statutes § 53a-3 (13) also incorporates an objective element by defining a "substantial and unjustifiable risk" to "be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (13); see *State* v. *Ghiloni,* 35 Conn. Sup. 570, 573, 398 A.2d 1204 (1978). The trial court's original charge and subsequent instructions fairly explained the objective

aspect of § 53a-3 (13). The defendant focuses on the part of the charge dealing with the objective element of § 53a-3 (13) to substantiate his claim that the court instructed that the defendant could be convicted if he was only criminally negligent by failing to perceive the risk of a fire through his improper wiring. General Statutes § 53a-3 (13) required the court to define and explain the objective standard of care of a reasonable person. The court specifically applied that standard by instructing the jury to compare the defendant's actions with what a "reasonably prudent person acting as an electrician" would have done in order to determine if the defendant's conduct constituted a gross deviation in this case.

In *State* v. *Bunkley,* 202 Conn. 629, 654–55, 522 A.2d 795 (1987), the defendant claimed that the trial court incorrectly explained the meaning of recklessness. Our Supreme Court upheld the defendant's conviction even though the trial court had omitted the subjective element of § 53a-3 (13), concerning the defendant's actual awareness of and conscious disregard of a risk, while summarizing the definition of recklessness. *State* v. *Bunkley,* supra, 655. In *Bunkley,* the trial court twice gave the jury the correct definition of recklessness, which included the element of awareness of and conscious disregard of the risk. The jury then asked for further clarification and the trial court responded by reading the full statutory definition of recklessness. Id., 655–56. Our Supreme Court concluded that the three correct definitions of the meaning of recklessness properly informed the jury of the necessary elements for determining the defendant's mental state. Id., 656.

In the present case, the trial court stressed the subjective element of § 53a-3 (13) by reading it twice to the jury in its original charge. In response to the jury's question, the court read the complete statutory definition of recklessness. Thus, the jury was properly

instructed that in order to convict the defendant it had to find that he was aware of and consciously disregarded a risk. There was no omission of the subjective element of recklessness in any of the court's instructions to the jury.

The defendant also attacks that portion of the charge in which the trial court instructed the jury that a charge of recklessness does not require the state to prove the defendant's intent. This is a correct statement of law that the defendant concedes in a footnote to his brief. "Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result." *State* v. *Beccia,* 199 Conn. 1, 4, 505 A.2d 683 (1986). Therefore, the court's statement that proof of intent is unnecessary was also a correct statement of law that did not mislead the jury.

A criminal defendant is entitled to "jury instructions that are accurate in law, adapted to the issues and adequate to guide the jury in reaching a correct verdict." *State* v. *Butler,* 207 Conn. 619, 636–37, 543 A.2d 270 (1988). Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions. *State* v. *Rouleau,* 204 Conn. 240, 254, 528 A.2d 343 (1987); *State* v. *Jupin,* 26 Conn. App. 331, 350, 602 A.2d 12 (1992). The trial court satisfied its duty to give proper jury instructions in this case. As to the elements of the offense charged, the defendant has failed to establish the existence of a constitutional violation that deprived him of a fair trial.

The defendant has also failed to provide any proof that the trial court's instructions constituted plain error. Because of our conclusion that the instructions on recklessness were proper, the defendant's claim does not constitute plain error.[4]

---

[4] We note that we examined this claim even though the defendant requested both *Evans-Golding* and plain error review in a footnote. In the

## II

The defendant next argues there was insufficient evidence from which the jury could conclude that he was actually aware of and consciously disregarded a substantial and unjustifiable risk that a death would result from his improper electrical work. He further argues that the evidence offered by the state failed to preclude the reasonable hypothesis that the defendant's actions constituted only negligence and not recklessness thus entitling him to a judgment of acquittal on the charge of manslaughter in the second degree pursuant to § 53a-56 (a) (1).

"The two-part test for appellate analysis of a claim of evidentiary insufficiency is well established. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." *State* v. *Montanez,* 219 Conn. 16, 19, 592 A.2d 149 (1991). It should also be noted that "[i]n this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Allen,* 216 Conn. 367, 381, 579 A.2d 1066 (1990).

We begin our analysis by agreeing with the defendant that to establish a charge of recklessness the state is required to prove that he subjectively realized and consciously decided to ignore a substantial risk that

past, this court has refused to consider improperly briefed claims and arguments presented in footnotes. See *State* v. *Reddick,* 15 Conn. App. 342, 343, 545 A.2d 1109, cert denied, 209 Conn. 819, 551 A.2d 758 (1988). All parties are advised not to continue this practice of using footnotes to circumvent the page limitations for briefs.

death by fire could occur from his improper wiring of the house. Because of the inherent difficulties of proving the subjective element of recklessness by direct evidence, courts have recognized that " '[t]he state of mind amounting to recklessness may be inferred from conduct.' " *State* v. *Bunkley,* supra, 645, quoting *Mooney* v. *Wabrek,* 129 Conn. 302, 308, 27 A.2d 631 (1942). Therefore, the "subjective realization of a risk may be inferred from a person's words and conduct when viewed in light of the surrounding circumstances." *State* v. *Ghiloni,* supra, 573; W. LaFave & A. Scott, Criminal Law (2d Ed.) § 30. " 'Recklessness' in causing a result exists when one is aware that his conduct might cause the result, though it is not substantially certain to happen." 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 336.

The defendant admits that there was sufficient evidence establishing his miswiring of the heater as the legal cause of the victim's death. The defendant was an experienced electrician and former electrical inspector who had installed similar heaters on many occasions. This case does not involve an inexperienced electrician or a lay person unfamiliar with the risk of fire from improperly wiring a heater. The evidence revealed that the main purpose of the national electrical code is to prevent fires. The defendant testified that, as an experienced electrician and former inspector, he attended seminars that updated information concerning the state's electrical code requirements. Thus, the defendant knew that compliance with the electrical code was necessary in order to prevent the possibility of a fire. Despite knowledge of the electrical code, the defendant still chose to install a basement heater lacking many basic safety features.

The defendant also installed the heater beneath an electrical outlet thereby increasing the likelihood of a fire. The evidence also revealed that the heater lacked

a lock nut and a properly functioning internal thermostat which further increased the likelihood that overheating would result in a fire. Despite the defendant's claim that he installed a lock nut, the jury was free to disbelieve him. When reviewing "evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985). We emphasize that this proposition applies only to inferences drawn from the evidence by the jury and not to whether a conclusion of innocence could be reasonably drawn from the evidence. Id., 618. This course of behavior by an experienced electrician allowed the jury to conclude that the defendant was aware that his behavior might cause a fire that could result in the death of a person in the house.

The defendant, relying on *State* v. *Carpenter,* 214 Conn. 77, 570 A.2d 203 (1990), argues that the state failed to disprove the reasonable hypothesis that the defendant's actions constituted only negligence and not recklessness. According to the defendant, because the evidence indicated that the defendant possessed the lesser mental state associated with criminal negligence, there existed a reasonable hypothesis consistent with innocence that entitled him to a judgment of acquittal on the charge of reckless manslaughter. "A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion." *State* v. *Morrill,* 193 Conn. 602, 610, 478 A.2d 994 (1984). Thus, "[p]roof of guilt must exclude every reasonable supposition of innocence. It need not exclude every possible supposition of innocence." *State* v. *Englehart,* 158

Conn. 117, 121, 256 A.2d 231 (1969); *State* v. *Turner,* 24 Conn. App. 264, 270–71, 587 A.2d 1050, cert. denied 218 Conn. 910, 591 A.2d 812 (1991).

The jury was free to examine the defendant's "whole course of conduct" in determining whether the defendant recklessly caused the death of the victim. *State* v. *Knighton,* 7 Conn. App. 223, 237, 508 A.2d 772 (1986). The defendant argues that there was no direct evidence establishing why he consciously disregarded a substantial risk of death. He contends that the miswiring of the 120 volt heater to a 240 volt circuit is at most negligent conduct but does not rise to the level of criminal recklessness.

The testimony of the state's witnesses as to the number and degree of violations of the electrical code established proof of a reckless disregard of a substantial risk of fire by the defendant. Acquarulo stated that he had never encountered that many violations of the electrical code at one site in all of his experience as an electrical inspector. Our review of all the evidence leads us to conclude that there was sufficient evidence proving that the defendant recklessly caused the death of the victim. The conclusion that the defendant's conduct constituted only criminal negligence is not reasonably supported by the evidence in this case. It is only a "possible supposition" similar to the defendant's claim that another person must have tampered with his work. Thus, the defendant was not entitled to a judgment of acquittal based on the reasoning of *State* v. *Carpenter,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.