[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 530-Y
In this habeas petition, the petitioner Richard Salz alleges that his conviction and subsequent incarceration were unlawful on the basis of his claim that he was denied the effective assistance of counsel at his underlying criminal trial. Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
On June 1, 1990, following a jury trial in the Superior Court, Judicial District of New Haven in Docket Number CR8-92062, the petitioner was convicted of Manslaughter in the Second Degree in violation of C.G.S. § 53a-56.
The petitioner was subsequently sentenced to confinement in the custody of the Commissioner of Corrections for a period of ten years, suspended after five years, with five year's probation.
While discharged from actual confinement, the petitioner remains on probation. As a consequence, this petition is not moot. cf. Delevieleuse v. Manson, 184 Conn. 434 (1981); Murray v.Lopes, 205 Conn. 27 (1987). CT Page 530-Z
The petitioner's conviction was upheld on direct appeal.State v. Salz, 26 Conn. App. 448 (1992); aff'd 226 Conn. 20
(1993).
In the underlying criminal trial, the petitioner was represented by James M. S. Ullman Esq., who is now deceased. The State was represented by State's Attorney Michael Dearington.
While the petitioner's second amended petition dated November 8, 1996 contains numerous allegations of inadequacy on the part of Attorney Ullman, at the habeas hearing the petitioner adduced evidence in support of his claim that counsel failed to bring forward physical evidence and a witness who would have contradicted certain State's witnesses. The petitioner asserted that counsel failed unreasonably to call Michael Petraccione as a witness to rebut the State's evidence that the petitioner did not voluntarily permit law enforcement officers to inspect his storehouse. As to the physical evidence, at the habeas trial, the petitioner introduced into evidence pieces of metal which he characterized as lock nuts. The petitioner asserted that he had provided these lock nuts to; Attorney Ullman, but that counsel failed to utilize them on his behalf at the criminal trial. It is the petitioner's claim that introduction of these lock nuts at trial would have rebutted a significant portion of the State's CT Page 530-AA claim that the petitioner had improperly installed a heating unit without lock nuts.
Finally, the petitioner testified that Attorney Ullman failed to adequately discuss with him his decision not to request a jury charge on the lesser included offense of criminally negligent homicide.
While the underlying facts are recited in the Appellate Court opinion, some discussion of the events is required to adequately analyze the petitioner's claims. At trial, the State adduced evidence that on December 28, 1988, a young boy, age 12, died as a result of smoke inhalation due to a house fire. He was then living with his brother and their grandparents, Burton and Louise Gorman, at 9 Demeter Drive in East Haven. Evidence further showed that in the fall of 1988, the petitioner, a licensed electrician, was hired by the Gormans to install baseboard heaters in their kitchen and basement room and to accomplish certain other electrical work at their home. The State presented witnesses who testified that the house fire started in the baseboard heater installed in the basement, and that the fire was due to faulty installation of the baseboard by the petitioner.
At the criminal trial, the petitioner testified. While acknowledging that he had installed the basement heater, he CT Page 530-BB denied that his work had been improper. He also claimed that the heating unit and panel box presented to the jury had been tampered with and were not in the condition in which he had left them with regard to their contents and the manner in which each had been wired.
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably; competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citations omitted; internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench CT Page 530-CC for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
CT Page 530-DD test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
The petitioner testified during the criminal trial. As part of his testimony, he claimed that on the day following the fatal fire, he was visited by Frederick Brow of the East Haven Fire Department. He claimed that he told Mr. Brow that he could enter his storehouse. On rebuttal, Mr. Brow testified that, in fact, CT Page 530-EE the petitioner had refused him permission to enter his storehouse, and that he gained entry only after obtaining a search warrant. At the habeas trial, the petitioner adduced testimony from Michael Petraccione that he had been with the petitioner at his residence on December 29, 1988 during Mr. Brow's visit. Mr. Petraccione testified that the petitioner had offered to give Mr. Brow a tour of his shop and that Mr. Brow had declined, saying that it was unnecessary. Mr. Petraccione testified that while he had been contacted by Attorney Ullman prior to the trial, he was not called as a witness. He indicated that if he had been called, he would have testified during the trial.
While perhaps Mr. Petraccione could have been called as a defense surrebuttal witness, the issue of whether or not the petitioner voluntarily offered Mr. Brow the opportunity to search his storehouse was not part of the State's case in chief. It became a credibility issue only after the defendant made the assertion during his testimony that he had made the offer to Mr. Brow during his visit.
This issue was not, however, essential to the State's proof. In its direct case, the State offered expert testimony that the house fire was caused by the petitioner's defective installation of the baseboard heater in the basement. Lawrence Acquarulu, Assistant State Building Inspector, testified that the CT Page 530-FF petitioner's work violated numerous provisions of the National Electrical Code. He stated that the petitioner had not obtained a permit for his work at the Gorman residence. As to the installation itself, Mr. Acquarulu stated that while the unit in question was a 120 voltage heater, it had been wired to 240 voltage, with the result that the unit was subjected to twice the voltage prescribed. He faulted the petitioner not only for wiring the unit to 240 voltage; he asserted that the petitioner's failure to adequately look over the unit before installing it to determine the voltage prescribed for it, and his failure to install the unit in accordance with instructions which accompany new units were also code violations. Additionally, Mr. Acquarulu faulted the manner in which wires were led from the unit to a nearby circuit breaker. He claimed that the faulty wiring caused the circuit breakers not to work in the manner intended. He also claimed that wires to the unit were not properly secured, or bonded with lock nuts. With respect to the panel box, Mr. Acquarulu found evidence that wires had been spliced within the panel, that the panel box was improperly marked and inadequately covered in violation of the electrical code. Mr. Acquarulu also cited, as a code violation, the petitioner's installation of the basement unit below an electrical outlet.
It was the testimony of Mr. Acquarulu, supported by other witnesses and physical testimony, that the fire started in the CT Page 530-GG basement unit because it became overheated as a result of being subjected to 240 voltage, and because the petitioner's manner of connecting the unit to the panel box was inadequate to shut the unit down once it became overheated. Thomas Haynes, an insurance company fire expert with substantial experience as a fire fighter, testified that the cause of the fire was the over voltage of the heater.
Thus, while evidence gleaned from the petitioner's storehouse that he stockpiled several heating units, including some used ones, may have had some bearing on the jury's perception of his credibility, the court is unpersuaded, in light of the demonstrated strength of the State's evidence in chief, that evidence the petitioner did, in fact, invite the authorities to search his premises, would have been meaningful to the jury in their ultimate determination of his criminal culpability. Counsel's failure to produce Mr. Petraccione does not erode the court's confidence in the jury's verdict.
At the habeas trial, the petitioner presented, as physical evidence, pieces of metal that he described as lock nuts. He testified that he showed these to Attorney Ullman prior to the criminal trial, but that counsel failed to utilize them on his behalf by presenting them to the jury. At the criminal trial, the State presented evidence that the wires to and from the heating unit should have been secured with lock nuts on installation, and CT Page 530-HH that post-fire examination of the unit failed to disclose any evidence of the lock nuts. In contrast, the petitioner, during his criminal trial testimony, claimed that he had properly utilized lock nuts to secure the wiring, and he asserted that fragments of aluminum found within the unit were actually pieces of lock nuts. He told the jury that lock nuts were made of a composite steel with a lower melting point, and he invited the jury to inspect certain circular marks on the unit which, he claimed, demonstrated the presence of lock nuts.
At the habeas hearing, the petitioner testified that lock nuts are made of aluminum and that aluminum would have melted at the extreme heat to which the unit was exposed during the fire, thus giving reason to the State's failure to discover the presence of lock nuts on the unit. The court, upon inspection of the lock nuts, is unable to determine their composition other than to conclude that they appear to be metal. The court will not take judicial notice that the lock nuts are aluminum, steel, or a steel composite merely on the basis of the court's untutored view of the items. Moreover, even if the court were able to determine that the lock nuts presented at the habeas hearing were composed of aluminum, and that they were in the hands of Attorney Ullman at the trial, such facts would not lead the court to the view that it was ineffective for Attorney Ullman not to present them to the jury. Having read the trial transcript en toto, the court CT Page 530-II is impressed with the State's evidence of the many dimensions to the petitioner's faulty electrical installations at the Gorman residence. Additionally, during its deliberations, the jury had the opportunity to inspect the heating unit and the wiring to determine if either or both items showed any marks which witnesses testified should have demonstrated the impact of lock nuts if present. Whether or not the lock nuts were made of aluminum would not have answered the question of whether the petitioner had properly installed them in the heating unit. The court is not persuaded that the presentation of actual lock nuts to the jury would have benefitted [benefited] the defense.
The petitioner asserts that counsel failed to discuss the concept of a lesser included charge with him. While, without the benefit of Attorney Ullman's testimony, the court is not able to fully assess this claim, the court reviews it as though proven. In this case, it is clear to the court that counsel made a strategic decision not to seek a charge on negligent homicide, but rather, to give the jury two choices-either guilty by recklessly causing death or not guilty. In closing argument, Mr. Ullman stated to the jury: "I think Judge Gormley will tell you as we did on voir dire, if that element, if that element of this offense, recklessness, is not proven to you beyond a reasonable doubt, you can only come to one verdict and that would be not guilty." cf. Petitioner's Exhibit A, Trial Transcript, p. 808. CT Page 530-JJ This approach was not out of step with the petitioner's own exculpatory view of the happenstance. During the criminal trial, the petitioner denied that he had connected the heating unit to 240 voltage, and he claimed that someone had tampered with the heating unit, wiring, and the; panel box after the fire. In short, his defense to the claim of recklessness was that he did not do the installation in a faulty manner, and he admitted that at a prior administrative hearing he had asserted that someone was biased against him. Under these circumstances, the court concludes that it was not ineffective for counsel to take the significant risk of giving the jury but one choice. Under circumstances in which it is clear that counsel's failure to ask for a lesser included charge to which I the petitioner was clearly entitled was a tactical decision and not an unknowing omission, and the decision was not clearly unreasonable, the court will not second guess trial counsel's decision. While counsel should consult with a criminal defendant about such choices, in this case the court is; persuaded that such a conversation would not have led to a different course of action.
For the reasons stated, the petition is dismissed.
Bishop, J. CT Page 530-KK