STATE OF CONNECTICUT *v.* JEROME BUNKER
(10086)

DUPONT, C. J., NORCOTT and LAVERY, Js.

Argued January 17—decision released April 7, 1992

*James A. Wade,* with whom were *William A. Collier* and, on the brief, *Craig A. Raabe,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Rosita M. Creamer,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (3).[1] The defendant claims

---

[1] "[General Statutes] Sec. 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person

that the trial court (1) improperly instructed the jury and (2) improperly denied his motion for judgment of acquittal because the evidence presented was insufficient to allow the jury to find him guilty of assault in the first degree under General Statutes § 53a-59 (a) (3). We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On November 25, 1989, approximately forty high school students gathered for a party at a private residence in West Hartford. Most of the participants knew one another as classmates at a local high school. A few people, including the defendant, were not known to the majority of the partygoers. The defendant and the victim did not know each other.

The victim was seated in the kitchen, talking to two young women and consuming beer, when he snapped his fingers in a way that projected a bottle cap across the kitchen. The bottle cap struck the defendant in the leg. The defendant approached the victim, who stood up and apologized. The defendant said, "I'm going to fix you. I'm going to get you back." The defendant then picked up a beer bottle, swung it, and hit the victim in the side of the neck. The bottle shattered, the victim fell to the ground, and the defendant got on top of him. The defendant had his hand cocked back to hit the victim when he was grabbed by a bystander.

seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

The information charged the defendant with committing assault in the first degree by each method contained in General Statutes § 53a-59 (a). The jury found the defendant guilty of assault in the first degree in violation of § 53a-59 (a) (3). The jury also found the defendant not guilty of assault in the first degree in violation of § 53a-59 (a) (1) and not guilty of assault in the first degree in violation of § 53a-59 (a) (2).

The victim began to bleed profusely behind his left ear. The defendant then fled the house and, some three hours later, turned himself in to the West Hartford police.

The wound in the victim's neck was very deep, requiring emergency surgery to stem the bleeding and, later, reconstructive surgery to repair a severed facial nerve. The defendant stipulated at trial that the victim suffered serious physical injuries as a result of this incident.

I

The defendant raises several challenges to the trial court's instructions to the jury. He claims that the trial court (1) incorrectly instructed the jury on the meaning of "under circumstances evincing an extreme indifference to human life" within General Statutes § 53a-59 (a) (3), (2) should have instructed the jury, as requested, on the meaning of "gross deviation" in explaining recklessness, and (3) instructed the jury on the greater and lesser included offenses in a manner that was confusing and incomprehensible to the jury.

A

The defendant's first claim is that the trial court did not correctly define the term "extreme indifference" to the jury. General Statutes § 53a-59 (a) (3) provides that a person is guilty of assault in the first degree when "under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person." The trial court instructed the jury on the statutory definition of "recklessly."[2] In explaining the elements of § 53a-59 (a) (3) to the jury, the trial court also instructed

[2] The text of the court's charge on the definition of "recklessly" is quoted in Part I B, infra.

the jury that "extreme" means "exceeding the ordinary or of a high degree" and then paraphrased the statutory term "extreme indifference to human life" to mean "a high degree of disinterest to human life." This instruction was given to the jury in the main charge and again in a reinstruction after the jury specifically asked for "the legal definition of extreme indifference to human life" during the course of its deliberations. The defendant claims that, in choosing "high degree" as a synonym for "extreme," the trial court failed to communicate to the jury that one must have the highest degree of disregard for human life in order to be convicted under § 53a-59 (a) (3). We do not agree.

" 'A charge to the jury is not to be clinically dissected nor are the portions of the charge to be read in isolation from the entire instruction. . . . Rather the charge is to be read as a whole with a view towards its probable effect in guiding a jury to a correct verdict. . . . The test to be applied to any part of the charge is whether the charge, when taken as a whole, presents the case to the jury fairly and accurately, such that no injustice will be done.' " (Citations omitted.) *State* v. *Williams,* 25 Conn. App. 456, 459, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991).

No definition of "extreme indifference to human life" is found in the penal code, title 53a of the General Statutes. In *State* v. *Spates,* 176 Conn. 227, 236–37, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979), the trial court was upheld when it defined the term for the jury by stating that it meant more than "mere carelessness" or "ordinary recklessness," and also charged the jury extensively on the meaning of "recklessly."

In *Spates,* the crime in question was manslaughter in the first degree a violation of General Statutes § 53a-55 (a) (3). Like assault in the first degree in a vio-

lation of General Statutes § 53a-59 (a) (3), manslaughter in the first degree requires proof of reckless conduct that creates a grave risk of death to another person "under circumstances evincing an extreme indifference to human life." The only difference between § 53a-55 (a) (3) and § 53a-59 (a) (3) is that the former requires the conduct to cause the death of another person, whereas the latter requires the same type of conduct to cause serious physical injury to another person. Thus, the holding in *Spates* is applicable in this case.

Here, as in *Spates,* the court further refined its definition of extreme indifference in the context of recklessness by explaining: "So mere carelessness is not enough nor is ordinary recklessness enough. However, intent is not necessary. The reckless conduct must create a grave risk of death under circumstances showing an extreme indifference to human life." Moreover, soon thereafter, in its jury instructions on the reckless form of assault in the third degree, the court again stressed the difference between ordinary recklessness and the type of reckless assault made criminal by § 53a-59 (a) (3): "[Y]ou'll note that this [§ 53a-61 (a) (2)] is ordinary recklessness, unlike the one [§ 53a-59 (a) (3)] defined in a previous charge, and the qualifying language is conduct which created a risk of death under circumstances evincing an extreme indifference to human life has been removed." In doing so, the trial court properly instructed the jury that the type of recklessness of § 53a-59 (a) (3) is one step further toward culpability than ordinary recklessness. The court, therefore, gave the jury a clear understanding of the aggravated form of recklessness required to support a conviction under § 53a-59 (a) (3).

## B

Next, the defendant argues that the trial court should have instructed the jury on the meaning of "gross devi-

ation" in its definition of recklessness. The trial court read the statutory definition of "recklessly" to the jury: "The statute defines recklessly in that a person acts recklessly with respect to a result or to a circumstance described by a statute when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the circumstances." See General Statutes § 53a-3 (13). The defendant requested that the court further instruct the jury: "A gross deviation is a great, or substantial, deviation, not just a slight or moderate deviation. There must be a great or substantial difference between, on the one hand, the defendant's conduct in disregarding a substantial and unjustifiable risk, and, on the other hand, what a reasonable person would have done under the circumstances." The trial court did not give the requested instruction.

While a request to charge that is relevant to the issue of the case and is an accurate statement of the law must be given, the trial court is not required to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request. *State* v. *Pinnock*, 220 Conn. 765, 789, 601 A.2d 521 (1992). Thus, the trial court properly discharges its duty "when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues." Id., 789-90; *State* v. *Watlington,* 216 Conn. 188, 198-99, 579 A.2d 490 (1990).

It is not improper for a trial court to refuse to define terms that are "used and might be understood in their

ordinary meanings." *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977); *State* v. *Lewtan,* 5 Conn. App. 79, 85, 497 A.2d 60 (1985). The term "gross deviation" as it appears in § 53a-3 (13) is not used in any way other than its ordinary meaning. See *State* v. *Salz,* 26 Conn. App. 448, 455, 602 A.2d 594 (1992).

Moreover, the trial court further instructed the jury that "the conduct described [in § 53a-3 (13)] is more than mere carelessness but not such as intended the serious physical injury." This further explanation of the concept of recklessness adequately covered the substance of the defendant's request to charge. Accordingly, the court's instructions gave the jury "a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974).

## C

The defendant's final claim of instructional error is that the jury charge on the essential elements of assault in the first degree and each lesser included offense was so confusing that it failed to guide the jurors to a clear understanding of the issues presented for their consideration. The defendant does not attack the substance of any particular instruction, but rather the methodology used by the court in presenting a description of the various offenses that the jury was to consider.

The defendant filed requests to charge on the lesser included offenses of assault in the second degree, General Statutes § 53a-60 (a), and assault in the third degree, General Statutes § 53a-61 (a). The defendant requested that the court first instruct the jury on the three types of assault in the first degree,[3] then proceed to the three applicable types of assault in the second

[3] See footnote 1, supra.

degree,[4] and finally conclude with the three types of assault in the third degree.[5] Instead, the court gave its charge on the substantive aspects of assault in the following order: first degree assault under § 53a-59 (a) (1); second degree assault under § 53a-60 (a) (1); second degree assault under § 53a-60 (a) (3); second degree assault under § 53a-60 (a) (2); third degree assault under § 53a-61 (a) (1); third degree assault under § 53a-61 (a) (3); first degree assault under § 53a-59 (a) (2); first degree assault under § 53a-59 (a) (3); and third degree assault under § 53a-61 (a) (2). The trial court explained that its methodology described each greater offense and all of its lesser included offenses, if any, before moving on to the next greater offense and its lesser included offenses, if any.

Under either method, the trial court had to instruct a jury, composed of laypersons, on nine different forms of assault. Whether it chose to do so as it did or as requested by the defendant, it necessarily was faced with a formidable task. Rather than being "confusing and incomprehensible," as claimed by the defendant in his brief, the jury instructions presented the substantive aspects of assault in a logical manner calculated to inform the jury as to the difference between each

---

[4] "[General Statutes] Sec. 53a-60. ASSAULT IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[5] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ."

type of assault. As the trial court moved from explaining one form of assault to the next, it emphasized which essential elements remained the same and which no longer needed to be proved.

It is important to note that the method used by the court was pedagogical; it was not an instruction on the order in which the jury was to consider the charges against the defendant. Thus, immediately following its instructions on the substantive elements of all of the varying degrees and methods of committing assault, the trial court made clear that the jury should first consider all three forms of assault in the first degree before considering any of the lesser included offenses. The jury had with it during its deliberations the information charging the defendant with the three methods of committing assault in the first degree using the words of the statute. The court pointed out to the jurors that, because the information contained the relevant words of the statute with respect to each charge of first degree assault, it would provide a useful guide in their deliberations.

Moreover, the defendant's claim of jury confusion caused by the instructions on the lesser included offenses and his claim that this confusion caused the jury to report a verdict on the third method of first degree assault when it had actually made a guilty finding on third degree assault, is belied by the fact that the jury foreperson reported that the jury, having found guilt on one of the forms of assault in the first degree, as contained in the information, did not consider any of the lesser included offenses. Our review of the jury charge as a whole, along with the verdict as reported by the jury foreperson and the subsequent individual polling of the jurors convinces us that, far from being confused as to what law to consider and apply in determining the defendant's guilt or innocence, the jury was given "a clear understanding of the elements of the

crime charged and the proper guidance to determine if those elements were present." *State* v. *Avila,* supra.

## II

The defendant next claims that the evidence before the jury was insufficient to support his conviction of the crime of assault in the first degree. The defendant claims that the manner in which the assault occurred, as a single, instantaneous, reflexive act during an extremely brief encounter between strangers, falls far short of the "circumstances evincing extreme indifference to human life" proscribed by General Statutes § 53a-59 (a) (3). We disagree.

When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. We then determine whether the jury could have reasonably concluded upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Carpenter,* 214 Conn. 77, 78–79, 570 A.2d 203 (1990); *State* v. *Bewry,* 26 Conn. App. 242, 245, 600 A.2d 787 (1991).

There was evidence before the jury that the victim, who had had no prior contact with the defendant, inadvertently struck the defendant in the leg with a bottle cap. The defendant and the victim then made eye contact and the defendant walked toward the victim. As the victim stood up, the defendant accused the victim of hitting him and, in spite of the victim's apologies, the defendant pushed the victim. As the victim raised his hands, the defendant, who was standing chest-to-chest with the victim, swung a beer bottle at a vital area of the victim's body with sufficient force to shatter the bottle and to inflict a very deep wound which lacerated facial nerves, arteries and veins, and frac-

tured a small bone near the base of the victim's brain. The defendant did not halt his attack when the victim fell to the floor but was pulled from on top of the victim when it appeared he was preparing to strike the victim again.

While the conduct here may not have been as serious as that involved in the cases relied on by the defendant; see, e.g., *State* v. *Bunkley,* 202 Conn. 629, 522 A.2d 795 (1987); *State* v. *Giguere,* 184 Conn. 400, 439 A.2d 1040 (1981); *State* v. *Johnson,* 14 Conn. App. 586, 543 A.2d 740, cert. denied, 209 Conn. 804, 548 A.2d 440 (1988); none of those cases can be read to establish the minimum quantum of evidence necessary to sustain a conviction under § 53a-59 (a) (3).

The jury here could have concluded beyond a reasonable doubt that the defendant's conduct was not merely reckless, but also evinced an extreme indifference to human life. Accordingly, the trial court properly denied his motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.