STATE OF CONNECTICUT *v.* MITCHELL PITT
(9973)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued June 15—decision released September 1, 1992

*Timothy Patrick Brady,* with whom were *Steven D. Brown* and, on the brief, *Steven T. Sledzik* and *James W. Bergenn,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The defendant claims that (1) General Statutes § 53a-55 (a) (3) is unconstitutionally vague as applied to him, (2) the trial court improperly instructed the jury on the essential elements of § 53a-55 (a) (3) by failing to instruct on the meaning of the statutory terms "extreme indifference to human life" and "grave risk of death," and (3) the trial court improperly excluded the testimony of a defense witness who was called to testify about the victim's alleged threats to kill the defendant. We affirm the judgment of the trial court.

The jury could reasonably have found certain facts. The defendant and the victim had an argument, during which the defendant threatened the victim with a fence picket, which ended the fight. Subsequently, the defendant drove off with some friends.

---

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

Later that evening, in the vicinity of the defendant's sister's house, the defendant and the victim again got into an altercation. This time a gun was involved. Three to five gunshots were fired, one of which fatally wounded the victim. Shortly after the shots were fired, the defendant was seen with a gun in his possession coming from the area where the victim lay wounded. The defendant then fled and was apprehended four months later. There were no eyewitnesses to what actually occurred between the defendant and the victim.

The defendant's first two claims involve § 53a-55 (a) (3). He argues that § 53a-55 (a) (3) violates his due process rights because it is unconstitutionally vague as applied to him. He also challenges the trial court's failure to define, in its instructions to the jury, the terms "extreme indifference to human life" and "grave risk of death," which are used in the statute.

The defendant concedes that he did not raise the claim of a due process violation at trial and, therefore, seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). He argues that the failure of the legislature to define the terms as used in the manslaughter statute fails to give him fair warning of the effect of the statute and fails to provide a sufficient guarantee against arbitrary enforcement. The defendant's failure to raise the constitutionality of a statute at trial, or to object to the instruction given,[2] in light of the facts that the jury could reasonably have found, leaves the record inadequate for a fair consideration of whether the statute was unconstitutionally vague as applied to him. *State* v. *Santiago,* 218 Conn. 483, 485, 590 A.2d 434 (1991). In the absence of such a record, review is precluded. *State* v. *Golding,* supra, 239–40.

---

[2] We note that not only did the defendant not object at trial to the instruction given regarding General Statutes § 53a-55 (a) (3), but he affirmatively requested that the court instruct the jury as to this lesser included offense.

The defendant next claims that the trial court improperly instructed the jury when it failed to define the terms "extreme indifference to human life" and "grave risk of death" during its main instructions to the jury and, again, later when the jury specifically requested the definition of "extreme indifference to human life" during its deliberations. The defendant failed to preserve this claim properly. He, therefore, seeks our review under *State* v. *Golding,* supra. We conclude, however, that the defendant's claim must fail under the third prong of *Golding* because the record shows that a constitutional violation does not clearly exist and he was not clearly deprived of a fair trial. Id., 240.

The defendant's testimony is relevant to a resolution of this issue. He claimed that on the evening of the shooting, the victim came looking for him at his sister's apartment. The victim and the defendant struggled for a gun that the victim had brought with him. The defendant gained possession of the gun and then requested that the victim leave. The two men went outside and the victim refused to leave without his gun. The defendant turned to walk back into the apartment building and the victim ran toward the defendant. The defendant then turned and fired two shots at the ground near the victim's feet. The victim stopped. The defendant again turned to walk into the apartment and the victim again ran toward the defendant. The defendant turned and again fired two shots at the ground near the victim's feet. The victim stopped. The defendant turned for a third time to enter the apartment. The victim again approached the defendant. This time, however, the defendant lost his balance when he turned toward the victim, and the gun went off, fatally wounding the victim.

It has long been held that a " 'charge should be read as a whole. . . . The whole charge must be considered from the standpoint of its effect on the jurors in

guiding them to a proper verdict . . . .' " (Citations omitted.) *State* v. *Foreshaw,* 214 Conn. 540, 548, 572 A.2d 1006 (1990). Where supplemental instructions are given, as is the case here, they must be viewed together with the original instructions. *State* v. *Toczko,* 23 Conn. App. 502, 507, 582 A.2d 769 (1990). "The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." *State* v. *Dyson,* 217 Conn. 498, 501, 586 A.2d 610 (1991); *State* v. *Bunker,* 27 Conn. App. 322, 326, 606 A.2d 30 (1992).

In *State* v. *Spates,* 176 Conn. 227, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979), the defendant claimed that the trial court's failure to define the term "extreme indifference to human life" for the jury required a new trial. The court's instructions, which defined the term for the jury by stating that it meant more than "mere carelessness" or "ordinary recklessness" and also charged the jury extensively on the meaning of "recklessly," were upheld. Id., 236–37. Likewise, in *State* v. *Bunker,* supra, 325–27, which involved similar statutory language found in General Statutes § 53a-59 (a) (3),[3] we recently determined that the trial court had not impermissibly diluted the meaning of "extreme indifference to human life" when it paraphrased the statutory term to mean "a high degree of disinterest to human life" where the trial court had adequately

[3] In *Bunker,* the crime in question was assault in the first degree in violation of General Statutes § 53a-59 (a) (3). Like manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), assault in the first degree requires proof of reckless conduct that creates a grave risk of death to another person "under circumstances evincing an extreme indifference to human life." The only difference between § 53a-55 (a) (3) and § 53a-59 (a) (3) is that the former requires the conduct to cause the death of another person, whereas the latter requires the same type of conduct to cause serious physical injury to another person. See *State* v. *Bunker,* 27 Conn. App. 322, 326–27, 606 A.2d 30 (1992).

defined the term "recklessly" to the jury and had stressed the difference between ordinary recklessness and the type of reckless assault made criminal by § 53a-59 (a) (3). We concluded that the *Bunker* jury was properly guided to a correct verdict because the court's instructions "gave the jury a clear understanding of the aggravated form of recklessness required to support a conviction under § 53a-59 (a) (3)." Id., 327.

Our review of the record in this case shows that the court instructed the jury on the statutory definition of "recklessly." No definition of "extreme indifference to human life" is found in the penal code, title 53a of the General Statutes, and the court did not define the term. In carefully instructing the jury concerning the difference between manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1),[4] however, the court explained that § 53a-55 (a) (3) requires "the prosecution . . . to prove beyond a reasonable doubt that the reckless conduct was under circumstances which evinced an extreme indifference to human life and that conduct by its very nature is conduct which created a grave risk of death to another person." Immediately thereafter, the court further explained that under § 53a-56 (a) (1), by contrast, "these two requirements are dropped. The state . . . merely has to prove that [the defendant] acted recklessly and that the death of [the victim] resulted from that reckless conduct." This instruction is entirely consistent with that approved by our Supreme Court in *Spates* and, we believe, "gave the jury a clear understanding of the aggravated form of recklessness required to support a conviction under [§ 53a-55 (a) (3)]." *State* v. *Bunker,* supra; accord *State* v. *Dyson,* supra, 502.

[4] General Statutes § 53a-56 (a) provides in pertinent part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

In response to the jury's requests for a definition of "extreme indifference to human life," the court stated that "[t]here is no special definition. There is no legal definition that I can go to and say this is how the law defines it. It really is a question of fact as to whether or not there was extreme indifference to human life. The term in and of itself is the ordinary meaning of each of the words put together. For me to try to give you an illustration would be for me to attempt to find facts for you, and I can't do that because you are the factfinders." In this supplemental instruction, the court appropriately instructed the jury as to the lack of any specific definition of the term "extreme indifference to human life," especially "when the defendant has not shown that the phrase was used in anything other than its ordinary meaning." *State* v. *Spates,* supra, 237.

The defendant also challenges the trial court's failure to define the term "grave risk of death." The defendant offers no analysis of this aspect of his claim nor has he suggested, in light of the evidence, that the phrase was used in anything other than its ordinary meaning. See *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977); *State* v. *Bunker,* supra, 328–29.

The trial court's instructions, when viewed as a whole, reveal that the jury could not have been misled by the lack of a statutory definition. The jury reasonably could have found, even if it accepted the defendant's testimony as true, that the defendant's behavior evinced "extreme indifference to human life" and recklessly created "a grave risk of death to another person." Repeatedly firing a loaded gun in the direction of another person, even at the ground, in a populated area exhibits behavior plainly within the intendment of General Statutes § 53a-55 (a) (3). The court's instructions gave the jury "a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State*

v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974). The defendant cannot prevail on his claim because it is not reasonably possible that the jury was misled. A clear constitutional violation does not exist, and the defendant was not clearly deprived of a fair trial.

The defendant's final claim is that the trial court improperly refused to admit certain testimony regarding the victim's threats to kill the defendant. The defendant attempted to present the testimony of Andrea Cunningham regarding certain threats made by the victim. Cunningham visited the victim at the hospital some time after the shooting and before his death. During one or more of those visits, the victim allegedly confirmed to Cunningham that he had intended to kill the defendant on the day of the incident. The state objected to this testimony on grounds of hearsay and relevance. The court refused to permit the challenged testimony because there were no indicia of reliability since the defendant's counsel indicated that the victim could not talk after the shooting and could only nod his head in response to statements made by Cunningham, and because the testimony was cumulative. On appeal, the defendant claims that the evidence was relevant and corroborated testimony that the defendant's actions were in self-defense. The defendant asserts that the trial court should have admitted Cunningham's testimony (1) as a statement against penal interest, (2) as hearsay falling within the catchall exception to the hearsay rule, or (3) as nonhearsay testimony offered not for the truth of the matter asserted but only to show the effect that this information had on the defendant's state of mind.

Cunningham had already testified that the victim, prior to the shooting, had expressed to her his desire to kill the defendant. Additionally, the defendant himself had testified that the victim had directly communicated such an intention to him during their confrontation

earlier in the day of the shooting. In his challenge to the trial court's evidentiary ruling, the defendant has the burden of proving the harmfulness of any alleged erroneous exclusion of evidence, when, as here, it does not involve a constitutional issue. *State* v. *Lewis,* 220 Conn. 602, 624–25, 600 A.2d 1330 (1991); *State* v. *Murdick,* 23 Conn. App. 692, 697, 583 A.2d 1318 (1991). Although the evidence was relevant to the defendant's claim of self-defense, it was cumulative. Evidence of the victim's alleged reiteration to Cunningham of his prior intention to kill the defendant would have been cumulative of other evidence to the same effect. Even if the evidence had been admissible, its exclusion, therefore, could not have been harmful. *State* v. *Crumble,* 24 Conn. App. 57, 70, 585 A.2d 1245 (1991), cert. denied, 218 Conn. 902, 588 A.2d 1077 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.