STATE OF CONNECTICUT *v.* EDUARDO GARCIA
(AC 23118)

Lavery, C. J., and West and Mihalakos, Js.

Submitted on briefs December 4, 2003—officially released January 27, 2004

*Steven B. Rasile,* special public defender, filed a brief for the appellant (defendant).

*Scott J. Murphy,* state's attorney, and *Christopher T. Godialis* and *Brian Preleski,* assistant state's attorneys, filed a brief for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Eduardo Garcia, appeals from the judgment of conviction, rendered after

a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1). On appeal, the defendant claims that (1) the court abused its discretion by failing to order a competency hearing, (2) there was insufficient evidence to support his conviction of assault in the first degree and (3) the court improperly instructed the jury. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Charlene Rodriguez lived with the defendant, who was her boyfriend, at the home of the defendant's mother. Rodriguez and the defendant had a child who was approximately five months old.[1] Rodriguez was attending a program for young parents to complete her high school education. Although the program provided a day care service, on the morning of January 18, 2000, Rodriguez did not take her daughter with her because snow had been falling. A teacher from the school picked up Rodriguez, who left the child in the sole care and custody of the defendant. The child was behaving as usual and did not have any visible injuries when Rodriguez left between 8 a.m. and 8:30 a.m.

Rodriguez returned from the program between 12:30 p.m. and 1 p.m. She immediately noticed that the child was wearing different clothes, including a hat. When Rodriguez asked why the child was wearing a hat, the defendant removed the hat, thereby revealing various injuries. Specifically, Rodriguez noticed that the child's left temple was "dented in," there was bruising on both sides of her head and scratches on her face. The defendant stated that he had been giving the child a bath when she slipped out of his hands and flipped over the

---

[1] The child had been born approximately three months premature and required hospitalization for ten weeks after her birth.

"baby bathtub." As a result, the child hit the sink and fell to the floor. Rodriguez questioned that explanation because, in her experience, the child was not yet capable of overturning the "baby bathtub."

Rodriguez noticed changes in the child's behavior that day; specifically, she would not eat and slept all the time. Rodriguez wanted to take her daughter for medical treatment, but the defendant prevented her from leaving or from using the telephone. He also told Rodriguez that she was not to mention the child's injuries to his mother. The next morning, Rodriguez was able to sneak downstairs to use the telephone and called one of her teachers to request transportation. She lied to the defendant and told him that she needed to take the child with her to obtain government assistance. Rodriguez then was able to obtain medical treatment for her daughter. The child was hospitalized with multiple skull fractures, bleeding in the brain and soft tissue swelling. Those injuries were caused by repeated forcible trauma and were consistent with child abuse.

The defendant subsequently was arrested, tried before a jury and convicted of assault in the first degree and risk of injury to a child. The defendant pleaded guilty to part B of the information, which subjected him to penalty enhancements pursuant to General Statutes §§ 53a-40b and 53a-59 (b) (2). On April 29, 2002, the defendant was sentenced to an effective prison term of twenty-seven years. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by failing to order a competency hearing. Specifically, the defendant argues that the court, sua sponte, should have ordered a hearing during the trial on the basis of his behavior. We disagree.

The defendant asserts that although his claim was not raised at trial, he is entitled to prevail under *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State v. Bangulescu*, 80 Conn. App. 26, 32, 832 A.2d 1187 (2003). We will review the defendant's claim because we agree that the first and second *Golding* prongs are satisfied. See *State v. George B.*, 258 Conn. 779, 785, 785 A.2d 573 (2001). The defendant's claim, however, fails to meet the third prong.

The following additional facts are necessary for the resolution of the issue. On September 7, 2000, defense counsel made a motion for a hearing pursuant to General Statutes § 54-56d to determine whether the defendant was competent to stand trial. The court granted the motion. On October 5, 2000, the court heard testimony from members of the medical team that evaluated the defendant. The defendant refused to cooperate with or respond to the team. The defendant also had defe-

cated and smeared fecal material on his face, arms and hands.[2] As a result, the evaluation team opined that at that time, the defendant was not competent to stand trial, but that there was a substantial probability that competency could be restored. The defendant was placed in the Whiting Forensic Institute (institute) for treatment.

On April 30, 2001, defense counsel waived a competency hearing and stipulated that the defendant was competent to stand trial. That was done on the basis of a February 26, 2001 report from the institute in which the evaluation team unanimously determined that the defendant had regained competence. On January 14, 2002, prior to the start of the trial, the court noted on the record that the defendant had refused to speak with counsel. The court also stated that it had observed the defendant's interactions with correction officers and marshals. Additionally, the court was satisfied with the defendant's responses to its questions. The court, on that basis, reminded the defendant that he had been declared competent and informed him that the trial would proceed.

At the outset, we set forth the relevant standard of review and legal principles that guide our resolution of the issue. "We review the court's determination of

---

[2] The defendant demonstrated a history of that type of behavior throughout the proceedings. Such an incident was reported on May 29, 2000, after the defendant's request to be placed in protective custody was denied. His actions were repeated on September 20, 2000, the day of his competency examination and at several times in November, 2000. At the defendant's competency and sentencing hearing, the court stated that the defendant had been "urinating in the cell and holding the feces in his hands with his pants down."

Man Liu, a forensic psychologist, testified at the sentencing hearing that he had examined the defendant and opined that the defendant's bizarre behavior was done on purpose. He further testified that such behavior is very rare and only manifests itself in individuals suffering from the most severe forms of mental illness, none of which had been diagnosed in the defendant.

competency under an abuse of discretion standard.
. . . In determining whether the trial court [has] abused
its discretion, this court must make every reasonable
presumption in favor of [the correctness of] its action.
. . . Our review of a trial court's exercise of the legal
discretion vested in it is limited to the questions of
whether the trial court correctly applied the law and
could reasonably have reached the conclusion that it
did. . . .

"The conviction of an accused person who is not
legally competent to stand trial violates the due process
of law guaranteed by the state and federal constitutions.
Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1
. . . . This constitutional mandate is codified in . . .
[General Statutes] § 54-56d (a), which provides that [a]
defendant shall not be tried, convicted or sentenced
while he is not competent. [A defendant is not compe-
tent if he is unable to understand the proceedings
against him or to assist in his own defense.] . . . This
statutory definition mirrors the federal competency
standard enunciated in *Dusky* v. *United States*, 362 U.S.
402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam).
According to *Dusky*, the test for competency must be
whether [the defendant] has sufficient present ability
to consult with his lawyer with a reasonable degree of
rational understanding—and whether he has a rational
as well as factual understanding of the proceedings
against him. . . . Even when a defendant is competent
at the commencement of his trial, a trial court must
always be alert to circumstances suggesting a change
that would render the accused unable to meet the stan-
dards of competence to stand trial. . . .

"Although § 54-56d (b) presumes the competency of
defendants, when a reasonable doubt concerning the
defendant's competency is raised, the trial court must
order a competency examination. . . . Thus, [a]s a
matter of due process, the trial court is required to

conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency. . . .

"[T]he rule of *Pate* v. *Robinson* [383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)] imposes a constitutional obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial. . . . When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence. . . . Competence to stand trial is a legal question, which must ultimately be determined by the trial court. . . . The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Cuesta*, 68 Conn. App. 470, 480–82, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002).

In the present case, the defendant cites several instances of behavior at trial that he argues constituted substantial evidence of mental impairment and required that there be a competency hearing. First, during cross-examination of Rodriguez, the defendant passed a note to his counsel that stated that he wanted the cross-examination to stop. The jury was excused, and the defendant stated that he did not understand what was

going on. After being questioned by the court, however, the defendant indicated that he wanted the cross-examination to continue. The court stated that it was becoming concerned that the defendant was attempting to "build another § 54-56d record."

After the state rested its case, the defendant informed his counsel that he wanted to exercise his right to testify. The defendant, however, refused to inform his counsel as to the topics and content of his testimony. During direct examination, the defendant testified that he had struck the child in the head with a closed fist. He then began to embellish and to fabricate testimony by stating that he had hit the child all day, had struck her with such force that her jawbone came out of her face, and then grabbed a knife and stabbed her in the stomach.[3]

At the conclusion of the defendant's testimony, the jury was excused, and the court again reiterated that the defendant had been declared competent and that the reason for the defendant's wildly false testimony was an attempt to introduce an insanity defense. Defense counsel orally requested a hearing pursuant to § 54-56d. The court reviewed the February 26, 2001 competency report, which had documented the defendant's prior behavior and concluded that the defendant had made efforts to delay the proceedings. The court stated that "[b]asically, [the experts'] conclusion is that he is malingering and he has [made] a conscious effort not to be cooperative . . . . And I think this is just another continuation of the whole thing of malingering and trying to set up a phony deal."[4] The court deter-

---

[3] The medical evidence at trial did not even remotely suggest that the child sustained either an injury to her jaw or any sort of stab wound.

[4] "Malinger" has been defined as "[t]o feign sickness or any physical disablement or mental lapse or derangement, especially for the purpose of escaping the performance of a task, duty, or work, or for purpose of continuing to receive disability payments. *Person who consciously feigns or simulates mental or physical illness for gain.*" (Emphasis added.) Black's Law Dictionary (6th Ed. 1990).

mined that despite the defendant's embellished testimony, a hearing was not required.

After the defendant was convicted, the court ordered a competency evaluation as part of the presentence investigation. On the basis of the evaluation, another § 54-56d examination ensued. The evaluation team, in a report dated April 12, 2002, again unanimously concluded that the defendant was competent. Starting with the February 26, 2001 report, all of the various evaluation reports from the institute concluded that the defendant was competent to stand trial. The reports also stated that he had engaged in a deliberate pattern of behavior to delay his trial. For example, the February 26, 2001 report concluded that "[i]t should be noted for the court that [the defendant] has demonstrated the capacity to engage in extremely provocative behavior in an effort to thwart the judicial process; *however, it is clear that this behavior is not the product of a serious mental disorder.*" (Emphasis added.)

We also note that after the defendant's "embellished" testimony and confession, the court excused the jury and reviewed the competency report. On the basis of the report and the court's observations, it was within the court's discretion to find that the defendant was malingering. As we have stated, "[t]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." *State* v. *Murray*, 28 Conn. App. 548, 553–54, 611 A.2d 916 (1992), appeal dismissed, 225 Conn. 524, 624 A.2d 377 (1993).

Our Supreme Court has accepted a definition of "malingering" as "the conscious manipulation of facts and details for self-serving ends. Basically lying about your condition so that people will believe [that you suffer from the feigned condition]." (Internal quotation marks omitted.) *State* v. *Medina*, 228 Conn. 281, 307 n.32, 636 A.2d 351 (1994).

This case calls to mind the policy that although "[t]he trial court should carefully weigh the need for a hearing in each case . . . *this is not to say that a hearing should be available on demand.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 86, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001); *State* v. *Janice*, 20 Conn. App. 212, 214, 565 A.2d 553, cert. denied, 213 Conn. 811, 568 A.2d 795 (1989).

We conclude, therefore, that the record indicates that the court properly weighed and considered all of the evidence regarding the defendant's competence prior to, during and after the trial. The court, therefore, did not abuse its discretion, and the defendant's claim fails to meet the third prong of *Golding*.

II

The defendant next claims that there was insufficient evidence to support his conviction of assault in the first degree.[5] Specifically, the defendant argues that no reasonable jury could have found that he acted with extreme indifference to human life or that he recklessly engaged in conduct creating a risk of death to another, both necessary elements for a conviction of assault in

---

[5] The defendant concedes that he failed to preserve his claim at trial and, therefore, seeks *Golding* review. "Unpreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof. . . . Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Ward*, 76 Conn. App. 779, 795 n.8, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003).

the first degree pursuant to § 53a-59 (a) (3).[6] We are not persuaded.

At the outset, we set forth our standard of review. "In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Gentile*, 75 Conn. App. 839, 862, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003).

"We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substan-

---

[6] The defendant does not challenge the third element of § 53a-59 (a) (3), which is that he "thereby cause[d] serious physical injury to another person . . . ."

tial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, 56 Conn. App. 742, 752, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000).

From the evidence presented at trial and the reasonable inferences that could be drawn therefrom, we conclude that the state produced ample evidence that the defendant had acted with extreme indifference to human life and that he recklessly engaged in conduct that created a risk of death to another. The defendant testified that he repeatedly struck the child in the head with his fist. Furthermore, the jury heard evidence that on January 18, 2000, the child was not suffering from any injury when her mother left in the morning, but that when the mother returned later that afternoon, the child had suffered visible injuries and demonstrated changes in her behavior. The defendant was alone with the child and had sole custody of her during the time period that she suffered her injuries. He prevented Rodriguez from seeking medical attention or informing anyone of the child's injuries. The defendant gave two versions of the incident to the authorities, both of which were false.[7] Finally, two physicians testified that the child's injuries could not have occurred in the manner described by the defendant and were the likely result of forcible trauma on repeated occasions that was consistent with child abuse.

On the basis of the cumulative effect of all of the evidence, a rational jury could have found that the defendant had caused repeated forcible trauma that resulted in multiple skull fractures, bleeding of the brain and soft tissue swelling, and that such actions were a

---

[7] "Generally, postcrime false exculpatory statements may only be considered by the jury as circumstantial evidence of consciousness of guilt." *State* v. *Brown*, 199 Conn. 14, 26–27, 505 A.2d 690 (1986). The fact that such statements are circumstantial evidence does not, however, diminish their probative value.

gross deviation from the standard of conduct a reasonable person would observe. Further, the jury reasonably could have concluded that the defendant had evinced an extreme indifference to human life and that he recklessly engaged in conduct that created a risk of death to the child. In short, the jury reasonably could have returned a guilty verdict with respect to the charge of assault in the first degree. We conclude, therefore, that the defendant's insufficiency of the evidence claim is without merit.

## III

The defendant's final claim is that the court improperly instructed the jury by failing to define "extreme indifference to human life." Specifically, he argues that the court failed to provide (1) any specific, in-depth instructions defining recklessness and (2) an adequate definition of "extreme indifference to human life."[8] We disagree.

The defendant concedes that his claim was not preserved at trial and therefore seeks review pursuant to *Golding*. We will review the defendant's claims of instructional error because the record affords us an adequate basis on which to do so, and the claimed errors are of constitutional magnitude because claims of instructional error of the elements of a charged crime implicate the defendant's due process right to a fair trial. See *State* v. *Gonzalez*, 69 Conn. App. 649, 656–57, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002). "Even though we review this claim under the third prong of *Golding*, we note that [w]hen the principal participant in the trial whose function it is to protect

---

[8] The defendant also argues that the court failed to distinguish the charge of assault in the first degree from the lesser included offense of assault in the third degree. The court did differentiate the two degrees of assault in its charge. Furthermore, the jury never reached the issue of assault in the third degree because it convicted the defendant of assault in the first degree. That claim, therefore, does not merit any further discussion.

the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) *State* v. *Cruz*, 75 Conn. App. 500, 509–10, 816 A.2d 683, cert. granted on other grounds, 263 Conn. 921, 822 A.2d 243 (2003). The defendant's claims fail under *Golding*'s third prong because he fails to demonstrate that a constitutional violation clearly existed and that it clearly deprived him of a fair trial.

We now set forth the applicable standard of review. "Where . . . the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view [them] as improper." (Internal quotation marks omitted.) *State* v. *Ortiz*, 79 Conn. App. 667, 674, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003).

In its charge to the jury, the court first read the text of § 53a-59 (a) (3) and then identified each of the elements twice. The court then continued its charge: "The state must prove beyond a reasonable doubt that the circumstances evince an extreme indifference to human life on the part of the defendant. Indifference means simply not caring. It means lacking any interest in a matter one way or the other. Extreme indifference is more

than carelessness or ordinary recklessness. You must find circumstances showing an extreme indifference to human life.

"Second, the state must prove beyond a reasonable doubt that under the circumstances as described, the defendant recklessly engaged in conduct that created a risk of death to another person. I'll define recklessness under our statutes. Recklessly: A person acts recklessly with respect to a result or to a circumstance described by statute, defining an offense, when he is aware of and consciously disregards a substantial and unjustifiable risk that such results will occur or that such circumstances exists. The risk must be of such a nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in a situation." After defining the "reasonable person" standard, the court then explained that a gross deviation is a "great or substantial deviation, not just a slight or moderate deviation. There must be a reasonable—there must be a great or substantial difference between, on the one hand, the defendant's conduct in disregarding a substantial and unjustifiable risk, and on the other hand, what a reasonable person would have done under the circumstances. Whether a risk is substantial and unjustifiable is a question of fact for you to determine under all of the circumstances."

We are satisfied that the court's charge adequately guided the jury in reaching its verdict. The court read to the jury the statutory definition of recklessness. It further informed the jury that recklessness was a "gross deviation" from the conduct of a reasonable person. It also defined the term "gross deviation" for the jury. The charge was more inclusive than others we have deemed proper. See, e.g., *State* v. *Bunker*, 27 Conn. App. 322, 325–29, 606 A.2d 30 (1992).

The court's charge with respect to the term "extreme indifference to human life" also was proper. "Our Penal

Code does not define, in title 53a of the General Statutes, what constitutes extreme indifference to human life. . . . Therefore, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . This court has done so in the past. Examining the term as it is used in title 53a of the General Statutes, we have stated that the legislature modified the level of indifference required with the adjective extreme, which has been defined to mean existing in the highest or greatest possible degree. . . . It is synonymous with excessive. . . . What evinces an extreme indifference to human life is really a question of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Colon*, 71 Conn. App. 217, 225, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

In its charge, the court stressed that "indifference" meant "not caring" and "lacking any interest in the matter . . . ." It also instructed that "extreme indifference" is more than "careless or ordinary recklessness." We affirmed a similar charge in *State* v. *Bunker*, supra, 27 Conn. App. 326, and conclude that the court gave the jury a clear understanding of the term "extreme indifference to human life." Accordingly, the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.