STATE OF CONNECTICUT *v.* DINO GHILONI

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 472

Argued December 20, 1977—decided March 31, 1978

*Richard Emanuel,* assistant public defender, for the appellant (defendant).

*John H. Durham,* assistant prosecuting attorney, for the appellee (state).

PARSKEY, J.   The defendant was charged with reckless endangerment in the first degree and was convicted of the lesser included offense of reckless endangerment in the second degree.  The defendant asserts that there was insufficient evidence to support this conviction and that, in any event, the state had not established that his conduct was not justified in the circumstances.  We disagree.

The evidence, viewed favorably for the state, may be briefly summarized. At about 12:30 a.m. on May 27, 1976, while the defendant was looking out of the window of his third-floor apartment he observed two men beating a third man on the sidewalk below. One of the assailants was kicking the victim about the face and the other was hitting him about the head with what looked like a long thin pipe. The victim was yelling for help and pleading with his assailants not to hurt or kill him. The defendant shouted "What is going on down there?" When that had no effect, the defendant got out his twenty-five caliber automatic revolver and returned to the window. By that time the beating had stopped and the assailants were walking away. The defendant ordered them to stop and when they failed to heed his order he fired a hollow-nosed bullet at the ground in the general vicinity of the assailants as a "warning shot." At that point the assailants ran to a car and sped away.

Early in the morning of that day the Hamden police received a report of a fight which had broken out on Dix Street. Shortly thereafter they received a second call from a gunshot victim. After an investigation the police concluded that the two incidents were related. They returned to the scene with several of the people involved in the altercation and determined that at the time of the injury the "gunshot" victim was standing seven feet north and five feet east of the southeast corner of Dix and George Streets. The house at 70 Dix Street, where the defendant lives, is located at the southwest corner of the intersection. The defendant's apartment faces east.

When confronted by the police the defendant voluntarily signed a statement in which he related that he had observed the beating previously described, noted that the assailants were dressed in

white baker-type uniforms, observed them walking away from the victim, ordered them to stop, noticed that they continued to move away and then fired a shot at the ground from his third-floor window in order to prevent the assailants from leaving the scene. He did not know where the bullet hit. He admitted that he should have fired into the air and that it was stupidity on his part to have fired the shot as he did.

## I

A person is guilty of reckless endangerment in the second degree "when he recklessly engages in conduct which creates a risk of physical injury to another person." General Statutes § 53a-64. "A person acts 'recklessly' with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . . The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (13). The statute applies an objective yardstick to measure the nature and degree of the risk. If this yardstick is used here, there was ample evidence from which the trier could have concluded that when the defendant fired his gun at the ground in the general vicinity of the assailants, the risk of injury was substantial. The statute applies a subjective yardstick to measure the defendant's awareness of the risk. Subjective realization of a risk may be inferred from a person's words and conduct when viewed in the light of the surrounding circumstances. LaFave and Scott, Criminal Law (2d Ed.) § 30. The defendant had been familiar with firearms for twenty-five years. He acknowledged to the police that he should have fired his shot into the air and that it was stupid to have fired at the ground. He did not know where

the bullet hit. The assailants on the street below were dressed in baker-type white uniforms and were within close range of his line of fire. Those factors, taken in the light of the surrounding circumstances, were sufficient to permit the court to conclude not only that the defendant was aware of the nature of the risk involved in his conduct but that he consciously chose to disregard it in a misguided belief that by doing so he was helping to apprehend the perpetrators of a vicious assault.

## II

The defendant claims that the state failed in its burden to rule out the defense of justification. He claims justification in the use of physical force (1) in defense of a third person and (2) in making an arrest or preventing escape. General Statutes § 53a-19 permits a private person to use physical force in defense of a third person but restricts the use of deadly physical force to those situations where the actor reasonably believes that the assailant is using or is about to use deadly physical force or is inflicting or about to inflict great bodily harm. The defendant concedes, as he must, that at the time of his shot the attack on the victim had stopped and the assailants were walking away from the scene, leaving the victim slumped on the sidewalk. There is no basis in the evidence on which to found a reasonable belief of action in defense of a third person because the defendant by his own testimony concedes that he was aware of those events.

The defendant also asserts a citizen's common-law right to effect an arrest or to prevent an escape of one whom he has observed committing a felony or a misdemeanor. We have no quarrel with the defendant's general statement of the right. *Malley* v. *Lane,* 97 Conn. 133, 137; *Wrexford* v. *Smith,* 2 Root 171; *Knot* v. *Gay,* 1 Root 66. We part company only when the defendant attempts to apply the gen-

eral principle to the facts of this case. General Statutes § 53a-22 (f) permits the use of reasonable physical force upon another person when and to the extent that the user reasonably believes it is necessary to effect an arrest or to prevent an escape, but it precludes the use of deadly physical force in such circumstances. "Deadly physical force" is defined in § 53a-3 (5) to mean "physical force which can be reasonably expected to cause death or serious physical injury." The defendant claims to have fired his "warning shot" at a grassy area located on the corner of Dix and George Streets. Although the specific area was pointed out to the trial court by reference to a sketch which was received in evidence, because of the use of such phrases as "over here" without further clarification it is unclear from a reading of the transcript whether that area is located at the southwest or the southeast corner. In either event the result would be the same. If the former, that is, just below the defendant's window, then the trial court was entitled to conclude, from all the surrounding circumstances, that the defendant could not have reasonably believed that it was necessary to shoot at the ground in order to effect an arrest when he could have shot into the air just as well. On the other hand, if he shot across the street in the direction of the assailants, then the trial court could have concluded that firing a shot in that manner could reasonably have been expected to cause death or serious physical injury and was, therefore, precluded by the statute. In that case the defendant would have used deadly physical force. The court could have concluded that at the very least the victim had been hit by a deflection of the "warning" shot. In the absence of such deflection the best that could be said about it is that it might have resulted in a near miss. To construe the statute so as to permit the near miss would invite all sorts of mischief. The purpose of the

statute is to prevent the promiscuous use of guns by private citizens by limiting their use to emergency situations to protect persons from death or great bodily harm. To permit private persons to fire warning shots in the direction of putative criminals whenever they reasonably believed such shots were necessary to effect an arrest or to prevent an escape would frustrate that purpose and would potentially expose innocent persons to the risk of death or great bodily harm.

Not only was there no justification for the defendant's use of the weapon either to defend the victim of the assault or to effect the arrest of the perpetrators but, from the defendant's own statement that he should have fired into the air and that firing at the ground was an act of stupidity on his part, the court could have concluded that it was unreasonable for the defendant to believe that his shot at the ground in the general vicinity of the assailants was necessary to effect an arrest and could have concluded that it was in fact an exercise in futility.

### III

The court imposed a sentence of imprisonment of thirty days and a period of conditional discharge of one year. It suspended execution of the sentence and, as a condition of the discharge, ordered the defendant to sell within thirty days all of the guns in a gun collection seized at the defendant's residence without a warrant. The court permitted the defendant to retain one gun for personal protection. The defendant attacks as invalid the court's order respecting the sale of his collection.

The trial court filed a finding limited to the issue involved in the sentence. The defendant filed a motion to correct one paragraph of the finding which asserts that the defendant has filed no claim for the

return of the weapons. Because the requested correction could have no bearing on the validity of the court's sentence we do not consider it. *Kobryn* v. *Kobryn,* 156 Conn. 638.

The defendant also assigns error in the court's conclusion that "[t]o permit the defendant the inventoried arsenal of weapons and ammunition would be to restore a ticking time bomb to the Hamden community." The court's conclusion is tested by the subordinate facts found. *State* v. *Battle,* 170 Conn. 469, 472. Unless a conclusion could not reasonably and logically be reached from these facts it must stand. *Belford* v. *New Haven,* 170 Conn. 46, 55; *State* v. *Warren,* 169 Conn. 207, 213. The court found that the inventory of weapons seized from the defendant consisted of an assortment of six revolvers, five rifles, one shotgun, one musket and several boxes of ammunition. It also found that the defendant had used one of those guns to commit the crime of reckless endangerment. The metaphorical flourish aside, it was not illogical for the court to conclude that an arsenal of weapons in the possession of one who had occasion to use one of them recklessly presented a temptation to the defendant and an unreasonable risk to the community.

General Statutes § 53a-30 authorizes the trial court, as part of a conditional discharge, to order the defendant, inter alia, to "satisfy any other conditions reasonably related to his rehabilitation." In ordering the defendant to sell his gun collection the court sought to remove a potential risk to the community by separating the defendant from the source of that risk. Like "cold turkey" to a drug-addicted person and "the wagon" to an alcohol-addicted person, the separation of the user and his dangerous substance or instrument has always been regarded as the first step on the road to rehabilitation. The

fact that the defendant was permitted to retain one gun for self-protection in no way negates the previous observation. Reducing the risk is as valid a justification for the court's action as eliminating it.

There is no error.

In this opinion A. HEALEY and D. SHEA, Js., concurred.