IN RE MATTHEW S.*
(AC 20450)

Schaller, Spear and Mihalakos, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued June 12—officially released September 26, 2000

*Raymond J. Rigat,* for the appellant (respondent father).

*Paula D. Sullivan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

SPEAR, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his son. The respondent claims that he was denied (1) his right to effective assistance of counsel and (2) his right to equal protection under the state constitution because he was not provided with the same residential treatment services that were made available to the respondent mother. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The respondent and the child's

---

[1] The respondent mother has not appealed from the judgment terminating her parental rights. We refer in this opinion to the respondent father as the respondent.

mother are the parents of a child born on April 11, 1996. The department of children and families (department) became involved in the child's life immediately after his birth. While the child and his mother were in the hospital, hospital staff contacted the department because of their concern over the mother's ability to care for the child. The department's investigation revealed that the mother had psychiatric problems and was believed to have a substance abuse problem. She also did not know how to care for a newborn. The department discovered that the respondent had an alcohol abuse problem and that he and the child's mother had a relationship that was described as violent, volatile and unstable.

After the mother's discharge from the hospital, the department provided her with a pediatric nurse for eight hours during the day and a psychiatric nurse for eight hours at night. As a result of its increasing concerns about the respondents' abilities to care for the child, the department, on May 14, 1996, requested and obtained an order of temporary custody, and the child was placed in foster care. On the following day, the respondent informed the department that he intended to enter the Stonington Institute, an in-patient treatment facility for substance abusers. Although he was seen at the institute for an intake interview, he later chose not to enter the program.

On June 6, 1996, the respondent was arrested for risk of injury to a child, sexual assault and violation of probation for his involvement with a fifteen year old girl.[2] On January 22, 1997, the respondent was sentenced to six years imprisonment, all of which were suspended, and five years probation. As part of his probation, the respondent was placed in an alternative incarceration program for six months. Thereafter, he

---

[2] The sexual assault charge was later disposed of by a nolle.

began living at Seaview, a supervised residential facility operated by the department of mental retardation.

As a resident of Seaview, the respondent received services such as therapy and vocational training. The respondent also received other services through the office of adult probation. The department transported the child to Seaview for weekly visits with the respondent. According to a social worker for the department, the respondent "canceled quite a few visits from September [1997] until the beginning of November, either canceled or would just not be in at least every other week. At times we'd bring [the child] and [the respondent] wasn't there. Or sometimes he would be there and say he can't visit because he has an appointment and just leave. . . . We requested a phone call the day before or that morning to let us know whether he was going to be able to visit. For the most part he did not do that."

In December, 1997, the respondent was admitted to the Stonington Institute for treatment of his alcohol abuse problem. He remained there for about two to three weeks and then returned to Seaview. Upon his return, the respondent was uncooperative with the requirements of the Seaview program. He refused to work, was absent from the program on the weekends, missed therapy appointments, failed to attend Alcoholics Anonymous meetings and failed to visit his son.

The respondent continued to live at Seaview until the summer of 1998. On June 11, 1998, he was arrested after a domestic dispute with the mother. On August 14, 1998, the commissioner of children and families filed a petition for the termination of parental rights with respect to the child. The court subsequently granted the termination petition because neither parent had "achieve[d] such degree of personal rehabilitation as would encourage the belief that within a reasonable

time . . . [they] could assume a responsible position in the life of the child." The respondent has filed this appeal.[3]

## I

The respondent first claims that he was denied his statutory right to the effective assistance of counsel.[4] He claims that counsel's representation was ineffective on the grounds that he "(a) failed to proffer an alternative dispositional plan to counter the department's request for termination as the only viable disposition; (b) failed to present expert testimony that the [respondent] had in fact made significant progress in rehabilitation while in prison; (c) . . . failed to pursue the department's statutory and constitutional obligation to make a greater level of services [specific to parenting] for the respondent than those offered to parents without a mental disability; and (d) . . . failed to pursue the denial of equal protection to the respondent father as guaranteed under the state constitution." These claims are baseless.

"In determining whether counsel has been ineffective in a termination proceeding, we have enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training

---

[3] In March, 1999, the respondent began serving a three year sentence for violation of his probation. While in prison, the respondent has not requested visits with his son. His release date from prison is July 21, 2001. The child has been in the same foster home for almost four years and his foster parents have indicated that they would like to adopt him.

[4] The respondent also claims that his right to effective assistance of counsel derives from both our state and the federal constitutions. We need not address this claim because even if the respondent had a constitutional right to effective assistance of counsel in a parental termination proceeding, such a right would not affect our analysis today or the outcome of this appeal.

and skill in [that particular area of the] law. . . . [*State v. Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979)]. The respondent must prove that [counsel's performance] fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights. Id." (Internal quotation marks omitted.) *In re Alexander V.*, 223 Conn. 557, 569–70, 613 A.2d 780 (1992). A showing of incompetency "without a showing of resulting prejudice . . . does not amount to ineffective assistance of counsel." *State v. Anonymous*, supra, 161.

We do not address whether trial counsel's representation of the respondent was deficient because the record on its face reveals that any alleged deficiencies did not result in prejudice. The record reveals overwhelming evidence that supported the court's judgment on numerous grounds. First, the evidence amply supported the court's finding that the respondent failed to achieve rehabilitation. Throughout the child's three years in foster care, the department offered the respondent visitation with the child and psychiatric treatment to encourage reunification. The court found that despite the department's efforts at reunification, the respondent visited his son only minimally during the three years that the child has been in foster care and has not requested any visits since the respondent's incarceration in 1998. The respondent also failed to cooperate with the department of mental retardation and the office of adult probation, and is currently serving a three year prison sentence.

Second, the evidence sufficiently supported the court's finding that the continuation of the respondent's parental rights is not in the child's best interest. In arriving at this decision, the court made specific findings regarding the seven statutory factors enumerated in General Statutes § 17a-112 (d). The court found, inter alia, that the child has bonded with his foster family

and no emotional bond would be broken by terminating the respondent's parental rights, and the respondent, by his criminal conduct and refusal to participate in his rehabilitative programs, prevented himself from maintaining a relationship with the child.

In view of the evidence in this case, we conclude that the respondent has failed to meet his burden of proving that any alleged inadequacy of trial counsel affected the outcome of the termination proceedings.

## II

The respondent next claims that his right to equal protection under the state constitution was violated because he was not provided with the same residential treatment services that were made available to the child's mother. This claim requires little discussion.

The respondent does not directly challenge the merits of the court's decision to terminate his parental rights. He merely asserts without analysis that the state "has clearly manifested a bias in favor of providing more intensive rehabilitation services to the mother . . . ." "We are not required to review issues that have been improperly presented to this court through an inadequate brief. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). The respondent's analysis is inadequate, and we therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.