STATE OF CONNECTICUT *v.* DANIEL HALLOWELL
(AC 20074)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued October 30, 2000—officially released January 23, 2001

*Richard R. Brown*, with whom was *Robert T. Rimmer*, for the appellant (defendant).

*Paul E. Murray*, supervisory assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Daniel Hallowell, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The defendant claims that the court improperly denied his motion for judgment of acquittal because (1) there was insufficient evidence to sustain the conviction of manslaughter in the first degree and (2) the state failed to disprove beyond a reasonable doubt that he was acting in self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 26, 1994, at approximately 10:30 p.m., the defendant, age fifteen, his brother and two friends left the defendant's house in his mother's car and went to a gasoline station in Colchester. While the defendant and his friends were at the gasoline station, three vehicles carrying eight individuals entered the gasoline station. A verbal exchange took place between the defendant and his friends and the men from the other three vehicles.

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

During the exchange between the two groups, the vehicle containing the defendant, his brother and their friends exited the gasoline station at a high rate of speed. The other three vehicles followed the defendant's vehicle out of the parking lot. A car chase ensued, during which one of the three vehicles following the defendant stopped its pursuit. The chase continued for several miles and ended when the defendant pulled into his driveway.

After the defendant's vehicle turned into the driveway, the two vehicles that had been behind it during the chase continued down to a point a short distance past the defendant's house. The vehicles then turned around and proceeded back toward the defendant's house. The vehicle carrying the victim, Michael Tommasi, was behind the other vehicle as the two cars drove past the house.

While the two vehicles were turning around after the chase, the defendant's vehicle proceeded up the driveway of his house and stopped. The defendant exited the vehicle, entered his house and obtained a loaded shotgun. He then walked outside and down to the end of the driveway with the gun in his hand.

As the two vehicles that were involved in the chase slowly drove past the defendant's driveway, the defendant fired the shotgun twice from the edge of his driveway. The driver of the second vehicle heard an explosion and someone scream that the victim, who was sitting in the rear seat of the car, was shot and had been killed. The two vehicles, one of which contained the victim, then drove directly to the state police barracks in Colchester. The victim died from shotgun pellet wounds to the head and neck.

The defendant was charged with and prosecuted for the crime of murder in violation of General Statutes § 53a-54a (a). The jury found the defendant not guilty

of the original charge of murder but guilty of one count of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (3). This appeal followed. Additional facts will be provided as necessary.

## I

The defendant first claims that the court acted improperly in denying his motion for judgment of acquittal because there was insufficient evidence to sustain the conviction of manslaughter in the first degree. Specifically, the defendant asserts that the evidence adduced at trial was insufficient for the jury to find beyond a reasonable doubt that he acted under circumstances evincing an extreme indifference to human life.

Our standard of review for a sufficiency of the evidence claim is well defined. Our Supreme Court has stated: "In reviewing [a] sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993).

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unrea-

sonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997), quoting *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). "[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

The defendant was convicted of manslaughter in the first degree. To obtain a conviction for manslaughter in the first degree, the state must prove beyond a reasonable doubt that the defendant, "under circumstances evincing an extreme indifference to human life . . . recklessly engages in conduct which creates a grave risk of death to another, and thereby causes the death of another person." General Statutes § 53a-55 (a) (3). The state also must prove that the defendant had the "general intent to engage in conduct that created a grave risk of death to another person under circumstances evincing extreme indifference to human life." *State* v. *Best*, 56 Conn. App. 742, 754, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000). A specific intent to kill or injure is not required. *State* v. *Shine*, 193 Conn. 632, 640, 479 A.2d 218 (1984).

The defendant argues on appeal that there was insufficient evidence to conclude that he acted with extreme indifference to human life at the time of the shooting.

"No definition of 'extreme indifference to human life' is found in the penal code, title 53a of the General Statutes . . . ." *State* v. *Pitt*, 28 Conn. App. 825, 830, 612 A.2d 60, cert. denied, 224 Conn. 907, 615 A.2d 1049 (1992). "Some guidance, as to the level of indifference the legislature fairly perceived is gleaned by its designating the indifference in § 53a-55 (a) (3) by the adjective extreme. That adjective has been defined to mean existing in the highest or greatest possible degree. . . . It is synonymous with excessive. . . . What evinces an extreme indifference to human life is really a question of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Best*, supra, 56 Conn. App. 755.

The evidence was sufficient to prove that the defendant acted with extreme indifference to human life. The defendant went into his house, after a car chase, obtained a loaded shotgun, walked at least one hundred feet to the edge of the roadway in front of the house and fired a shotgun round, containing between nine and fifteen pellets equivalent to .32 caliber bullets, at a vehicle that he knew to be occupied. The vehicle was moving away from the defendant and was forty to sixty feet down the road when the shotgun rounds were fired. Some of the pellets fired from the shotgun penetrated the back window of the vehicle in which the victim was sitting in the rear seat. The victim died from pellet wounds to the head and neck.

We conclude that the evidence of the defendant's conduct, together with reasonable inferences drawn therefrom, was sufficient for the jury to find beyond a reasonable doubt that, under circumstances evincing an extreme indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of the victim's death. The court properly denied the defendant's motion for judgment of acquittal on this ground.

## II

The defendant next claims that the court improperly denied his motion for judgment of acquittal because the state failed to disprove that he was acting in self-defense. Specifically, the defendant contends that the court improperly denied his motion for judgment of acquittal because he presented evidence of self-defense, which the state did not rebut or disprove beyond a reasonable doubt. We disagree.

Generally, "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . ." General Statutes § 53a-19 (a). A person is not justified, however, "in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling . . . ." General Statutes § 53a-19 (b). In other words, § 53a-19 (b) "requires recourse to retreat in lieu of the use of physical force only when the actor himself knows that he can avoid the necessity of using such force with complete safety . . . ." (Internal quotation marks omitted.) *State* v. *Carter*, 48 Conn. App. 755, 769–70, 713 A.2d 255, cert. denied, 247 Conn. 901, 719 A.2d 905 (1998).

The statute focuses on the person claiming self-defense. *State* v. *Corchado*, 188 Conn. 653, 663, 453 A.2d 427 (1982). "This statutory emphasis upon the defendant further demonstrates the function of the jury in [its] evaluation of the self-defense claim." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 48 Conn. App. 769. "The state has the burden of disproving the defense of justified use of force . . . beyond a reason-

able doubt. . . . Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 17 Conn. App. 97, 99, 550 A.2d 21 (1988).

The defendant argues on appeal that he presented ample evidence that the shooting was in response to imminent fear of deadly bodily harm and was done in self-defense. A jury reasonably could conclude that the defendant's act of leaving his house, walking to the end of the driveway and firing a loaded shotgun at a vehicle that was moving away from him, and which was already forty to sixty feet away from him, were sufficient to sustain the state's burden of disproving self-defense.

Also, according to the defendant, the shooting occurred after several months of harassment by some of the men in the two cars and threats of bodily harm by other young men in the community. The defendant argues that because no evidence was offered by the state that, with complete safety, he could have retreated from his property, he was allowed to use self-defense. We disagree.

The defendant had safely retreated into his family's house before he returned to the end of the driveway and fired the shotgun. The men in the two vehicles never entered the defendant's property, nor did they leave their cars or the street at anytime when they were in front of the defendant's house. Therefore, the jury reasonably could have concluded that the defendant was not justified in using deadly force in this case

because he could have retreated with complete safety by staying in his house, but chose to leave. Accordingly, the court properly denied the defendant's motion for judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.