# STATE OF CONNECTICUT *v.* RAYMOND SMITH
## (AC 19143)

Lavery, C. J., and Mihalakos and Flynn, Js.

Argued February 14—officially released May 8, 2001

*John A. Keyes*, with whom, on the brief, was *Martin M. Looney*, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Raymond Smith, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)[1] and 53a-49 (a) (2),[2] and having a weapon in a vehicle in violation of General Statutes (Rev. to 1997) § 29-38.[3] On

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes (Rev. to 1997) § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both . . . . The word 'weapon', as used in this section, means . . . any dirk knife or switch knife or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, and any other dangerous or deadly weapon or instrument, including any . . . knife, the edged portion of the blade of which is four inches or over in length . . . ."

appeal, the defendant claims, inter alia, that the trial court improperly (1) excluded evidence in support of his defense of justification by virtue of making a citizen's arrest pursuant to General Statutes § 53a-22[4] and, thereafter, denied his request to instruct the jury on the defense of citizen's arrest,[5] (2) accepted the jury verdict of guilty of the offense of having a weapon in a vehicle because the state did not prove beyond a reasonable doubt that he knowingly possessed the weapon, to wit, a knife, in the vehicle and (3) denied his motion to sever the charge of having a weapon in a vehicle from the other charges. We reverse the judgment of conviction of attempt to commit assault in the first degree and remand the case for a new trial

---

[4] General Statutes § 53a-22 provides in relevant part: "(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest or to prevent an escape from custody. . . .

\* \* \*

"(f) A private person acting on his own account is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to effect an arrest or to prevent the escape from custody of an arrested person whom he reasonably believes to have committed an offense and who in fact has committed such offense; but he is not justified in using deadly physical force in such circumstances . . . ."

[5] The defendant claims in the alternative that, assuming that the court properly determined that there is a requirement under § 53a-22 that the person who made the arrest be present at the time the felony was committed, the court improperly prevented him from presenting evidence of a mistake of law and improperly refused to instruct the jury that his mistake of law was relevant to negate the intent required to commit the alleged assault. The defendant further claims in the alternative that the court improperly prevented him from presenting evidence and declined to charge the jury that his belief that the victim was a felon wanted by the police constituted a mistake of fact under General Statutes § 53a-6 (a) (1) and (3). Because we decide that the court improperly found the concept of citizen's arrest inapplicable to the facts of this case, we need not consider those additional claims.

on that charge.[6] We affirm the judgment of conviction of having a weapon in a motor vehicle.

To understand the incident that gave rise to the criminal charges against the defendant and his interposition of a justification defense, we first discuss the background events that eventually led to his arrest. According to the defense, on February 28, 1997, the defendant unsuccessfully telephoned M,[7] his live-in girlfriend, at their residence. The defendant returned home later that evening to find the door to their residence open, the television on and other indications that M had quickly left the premises. Concerned about his girlfriend, the defendant began to search for her. When he could not locate M, he reported her as missing to the West Haven police department in the early morning hours of March 1, 1997.[8]

---

[6] The defendant further claims that the court improperly (1) misled the jury in its instruction on the offense of attempt to commit assault in the first degree and (2) denied his motion to dismiss the charges because the loss of the West Haven police department records prejudiced his ability to present the defenses of citizen's arrest and self-defense. Because those issues are not likely to arise in a new trial, we decline to address them in this appeal. In light of our reversal of the judgment of conviction of attempt to commit assault in the first degree, we further decline to review the defendant's additional claims that the court improperly (1) admitted into evidence his statement to the police officer at the scene that he was wearing gloves to avoid the danger of acquired immune deficiency syndrome (AIDS) and (2) denied his motion to dismiss the prosecution or to declare a mistrial because of prosecutorial misconduct, as those claims related solely to the charges of attempt to commit assault in the first degree and assault in the first degree in violation of General Statutes § 53a-59 (a) (1), with which the defendant also was charged. The jury acquitted him of assault in the first degree and one count of attempt to commit assault in the first degree.

[7] Because of the allegations that the defendant's girlfriend was a rape victim, her actual name is not used and she is hereinafter referred to as M. General Statutes § 54-86e provides in relevant part: "The name and address of the victim of a sexual assault . . . shall be confidential and shall be disclosed only upon order of the Superior Court, except that such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses."

[8] The West Haven police department subsequently lost the defendant's missing person report.

Soon after notifying the West Haven police, the defendant received a telephone call from M during which she stated that Michael Dziemkiewicz had abducted her from their residence and taken her to a house on Greenwich Avenue in New Haven, where he forced her to smoke cocaine and raped her.[9] She further told the defendant that she had managed to escape and was calling from her friend's home. After speaking with the defendant, M called the West Haven police department.

Although the state agreed at trial that M was absent from the residence on the night of February 28, 1997, the state disagreed as to the reason for her absence. The state presented evidence that M voluntarily left the residence with Dziemkiewicz on the afternoon of February 28, 1997, and joined others at the Greenwich Avenue house. There, according to the state, M and Dziemkiewicz smoked cocaine and engaged in sexual activity. M was concerned as to what the defendant would do if he discovered that she had spent the night taking drugs with Dziemkiewicz. The state maintained that after M learned that the defendant already had called her friend's home, she misled him by telling him that Dziemkiewicz abducted her, forced drugs on her and raped her.

Following the alleged abduction, the defendant and M both complained to the West Haven and New Haven police over the next several days.[10] On March 1, 1997, the defendant and M set out to find the Greenwich Avenue house to which M was taken. After locating the house, they found two New Haven police officers and

---

[9] The defense presented evidence indicating that Dziemkiewicz had been M's manager, pimp and drug supplier before she left behind a life of drugs and prostitution in the fall of 1996. According to the state, M was acquainted with Dziemkiewicz from her days as a drug-dependent prostitute.

[10] The West Haven and New Haven police departments subsequently lost the records of the defendant's and M's calls and reports made between March 1 and 5, 1997.

told them what had occurred there the preceding night. Their efforts were to no avail, however, because the doorbell went unanswered and, without a search warrant, the police refused to enter the premises. On March 2, 1997, the defendant and M returned to the house in search of Dziemkiewicz. The defendant entered the house through a broken front door. Not finding anyone home, he broke several items and returned to his vehicle in which M was waiting. M then pointed out to the defendant the vehicle of Dziemkiewicz's friend, the same individual who gave M a ride to her friend's home from which she called the defendant on the morning of March 1, 1997. The defendant smashed the windshield and thereafter returned with M to West Haven.

Several days later, on March 5, 1997, the defendant was driving his vehicle in New Haven when he observed Dziemkiewicz at the corner of Kimberly Avenue and Ella Grasso Boulevard. It was there that the events ensued that gave rise to the criminal charges against the defendant.

The defendant used his vehicle to chase Dziemkiewicz onto sidewalks and into the street until finally cornering him on the front porch of a nearby home. As the defendant's vehicle came to an abrupt halt, Dziemkiewicz yelled to the defendant, "I'm packing, I'm packing."[11] The defendant exited his vehicle, with the engine still running, and ran onto the porch carrying an aluminum baseball bat. In the ensuing scuffle, Dziemkiewicz threw the wooden base of a plant container at the defendant. The defendant, in turn, hit Dziemkiewicz several times with and without the baseball bat, causing injuries to Dziemkiewicz's head, right ear and face.

As those events were unfolding on the porch, the defendant repeatedly yelled to a small crowd that had gathered that he was making a citizen's arrest and that

---

[11] The expression, "I'm packing," is street language for "I have a gun."

the police should be called. Officer John Goad of the New Haven police department arrived shortly thereafter. Goad placed the defendant under arrest and the victim was transported to a hospital.

The defendant was charged with one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), two counts of attempt to commit assault in the first degree and one count of having a weapon in a motor vehicle. He was convicted of count two, attempt to commit assault (with a baseball bat) in the first degree and count four, having a weapon in a motor vehicle. The defendant received an effective sentence of ten years incarceration, suspended after six years, and three years probation. This appeal followed.

I

The defendant first claims that the court improperly excluded evidence in support of his defense of citizen's arrest[12] and, thereafter, improperly denied his request to instruct the jury on the defense of citizen's arrest. Specifically, the defendant argues that the court improperly interpreted § 53a-22 (f) as requiring the person making the arrest to have been present at the time the felony was committed for the defense of citizen's arrest to apply. We agree with the defendant.

The following additional facts and procedural history are necessary to resolve this issue. At a September 21, 1998 pretrial hearing, the defendant argued that

[12] Although the defendant states in his brief that the court improperly excluded evidence on the defense of citizen's arrest, he did not properly brief the issue. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *In re Matthew S.*, 60 Conn. App. 127, 133, 758 A.2d 459 (2000). We therefore decline to review the defendant's claim that the court improperly excluded evidence on the defense of citizen's arrest.

Connecticut law allows a private citizen to make a citizen's arrest of a felon though the private person was not present when the felony was committed.[13] Citing *Wrexford* v. *Smith*, 2 Root (Conn.) 171 (1795), and *State*

---

[13] The defendant cites *Wrexford* v. *Smith*, 2 Root (Conn.) 171 (1795), for the proposition that Connecticut common law did not have a presence requirement. The state also cites *Wrexford*, but for the exact opposite proposition. In *Wrexford*, the plaintiff took some tobacco from a store without paying for it. Id. Responding to "an advertisement from the owner of the store," the defendant pursued the plaintiff and brought him back to the store. Id. The plaintiff subsequently was prosecuted and convicted of the theft. Id. On appeal, the court held that "[w]hen a theft is committed, the owner of the goods stolen, may pursue and take the goods and the thief; and so may any other person with authority from the owner; or even without, and tender the thief to justice, and he will be excusable provided the person taken is found guilty." Id.

In a brief to the trial court dated August 21, 1998, the defendant further cited, inter alia, 5 Am. Jur. 2d, Arrest § 58 (1995), 1 Restatement (Second), Torts § 119 (b), p. 194 (1965), and 1 F. Wharton, Criminal Procedure (13th Ed. Torcia 1989) § 59, for the proposition that a private citizen may make an arrest, regardless of whether he actually was present at the time the felony was committed, if he reasonably believes the individual committed a felony and the individual, in fact, did commit such felony.

Accordingly, "[u]nder the common law rule, still in effect in many jurisdictions, a private person may arrest without a warrant in a felony case if the felony has actually been committed and he has reasonable grounds for believing that the person arrested was the one who committed it. The commission in fact of the felony provides the probable cause on which the arrest is based. Under this rule, if no felony has in fact been committed an arrest without a warrant by a private person will be illegal . . . ." 5 Am. Jur. 2d, supra, § 58. "At common law, and by statute in many states, a . . . private person is allowed to make an arrest, without a warrant, for a felony even though it was not committed in his presence. . . . A private person may make such an arrest when a felony was in fact committed and when he has reasonable ground to believe that the person arrested committed such felony. If a felony was in fact committed, the power of a private person is the same as that of an officer. If a felony was not in fact committed, a private person has no power of arrest . . . ." 1 F. Wharton, supra, § 59.

Section 119 of the Restatement (Second), supra, provides in relevant part: "[A] private person is privileged to arrest another without a warrant for a criminal offense

"(a) if the other has committed the felony for which he is arrested, or

"(b) if an act or omission constituting a felony has been committed and the actor reasonably suspects that the other has committed such act or omission . . . ."

v. *Ghiloni*, 35 Conn. Sup. 570, 398 A.2d 1204 (1978),[14] the state argued that "there is an in presence requirement both at common law and under the statute."

The court agreed with the state and ruled that "the concept of citizen's arrest is [inapplicable] to [the] stipulated facts in this case. It is stipulated that this defendant did not observe the alleged kidnapping and rape reported to him, and therefore as I have indicated I don't think the concept is applicable to these stipulated facts."

Notwithstanding the court's ruling, the defendant filed a request to charge the jury on the defense of justification that was based on the making of a citizen's arrest. On September 28, 1998, the defendant filed an amended request to charge on the defense, which the court denied. The defendant's request would have instructed the jury that it was the state's obligation to prove beyond a reasonable doubt that Dziemkiewicz had not committed some felony or that the amount of force the defendant used to hold and subdue him was

---

[14] The defendant also cited *Ghiloni*. In *Ghiloni*, the defendant witnessed from the window of his third floor apartment two men savagely beating a third individual on the sidewalk below. *State* v. *Ghiloni*, supra, 35 Conn. Sup. 572. The defendant yelled at the assailants to no avail. Id. He then retrieved his handgun and returned to the window, only to find that the assault had ended and the assailants were walking away. Id. The defendant ordered the assailants to stop. Id. When they did not stop, the defendant fired his gun in their general vicinity, at which time the assailants ran to a waiting vehicle and sped away. Id.

The local police received two calls that day, one reporting a fight and a second from a gunshot victim. Id. "After an investigation the police concluded that the two incidents were related." Id. The defendant was charged with reckless endangerment in the first degree and subsequently was convicted of the lesser included offense of reckless endangerment in the second degree. Id., 571. At trial and on appeal, the defendant asserted "a citizen's common-law right to effect an arrest or to prevent an escape of one whom he has observed committing a felony or a misdemeanor." Id., 574. Although the appellate session of the Superior Court agreed with the defendant's general statement of the right, it nonetheless concluded that such right precluded the use of deadly physical force. Id., 574–75.

excessive under the circumstances. In accordance with the state's supplemental request to charge dated September 28, 1998, the court instructed the jury as follows: "Now in this case when he was testifying the defendant made reference that he was effecting a citizen's arrest during his confrontation with Mr. Dziemkiewicz. The defendant had no legal right to make a citizen's arrest under the facts of this case."

Regarding the court's refusal to give the defendant's proposed jury instruction that was based on the making of a citizen's arrest, "[i]t is a well established principle that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . The charge must be correct in the law, adapted to the issues and sufficient to guide the jury. . . . The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established. . . . On review, we examine the charge to see if it fairly presents the case to the jury in such a way that injustice was not done under the law to the legal rights of the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 560–61, 747 A.2d 487 (2000).

The dispositive issue is whether § 53a-22 requires that a felony be committed in the presence of the citizen who makes the arrest. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000). Section 53a-22 provides in relevant part: "(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render

justifiable the use of physical force to make an arrest or to prevent an escape from custody. . . ." Subsection (f) of General Statutes § 53a-22 provides in relevant part: "A private person acting on his own account is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to effect an arrest or to prevent the escape from custody of an arrested person whom he reasonably believes to have committed an offense and who in fact has committed such offense; but he is not justified in using deadly physical force in such circumstances . . . ."

According to the plain language of the statute, a private citizen may use reasonable force in arresting an individual whom he reasonably believes has committed an offense.[15] If the arrested individual did not commit an offense, however, regardless of the reasonableness of the private citizen's belief, the latter is not justified in making a citizen's arrest. There is no requirement in § 53a-22 that the citizen making the arrest must also have witnessed the commission of the offense or have come upon the scene shortly after its occurrence,[16] nor has our Supreme Court put such a gloss on the statute.

---

[15] General Statutes § 53a-24 (a) defines an offense as "any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. . . ."

[16] We note in passing that our decision is consistent with the model jury instruction for General Statutes § 53a-22 found in A. Ment & R. Fracasse, Connecticut Selected Jury Instructions: Criminal (3d Ed. 1995) § 2.43. Section 2.43 (C) provides in relevant part: "The last situation involves the right of a private person who is not a peace officer to use reasonable force in effecting what is known as a civilian arrest. Our law allows a civilian arrest for any offense, whether it be a felony, misdemeanor, traffic violation or other infraction, but the arrestor is held to a very high standard of conduct. Unlike a peace officer, the civilian making an arrest may not claim justification merely because he believes that the arrested person committed an offense. Rather, regardless of the reasonableness of his belief, his right to

On appeal, the state concedes that neither the common law nor § 53a-22 requires that a felony be committed in the presence of the person making the citizen's arrest. The state argues, however, that we nevertheless may uphold the defendant's conviction on the alternate ground that the defendant used unreasonable force when effecting the arrest. We do not agree.

"If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. . . . [A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . . A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) *State* v. *Miller*, 55 Conn. App. 298, 301–302, 739 A.2d 1264 (1999), cert. denied, 252 Conn. 923, 747 A.2d 519 (2000).

---

make a civilian arrest is allowed only if the person actually committed an offense. A mistaken arrest, no matter how well-intentioned, is not justified under our law.

"The test you are to use to determine whether the civilian arrest was justified is as follows:

"(1) Did the complainant actually commit some offense? It is not necessary that the defendant actually saw the offense being committed if, under the circumstances his belief was reasonable. But regardless of his belief, the privilege is lost if the complainant did not actually commit an offense.

"(2) Was the amount of force used to effect the arrest reasonable—*and not excessive*—under the circumstances? He may never use deadly force except if necessary to defend himself or another from the use or imminent use of deadly force. Note that deadly force may not be used to effect the arrest or prevent the escape of one who has committed a *felony* . . . .

"If you find that the purported civilian arrest met these conditions, then you must find the defendant not guilty of assault. If you find that the state has proven beyond a reasonable doubt that either of these necessary elements of justification were not present, then you must proceed, without any thought of the claimed justification, to decide whether the defendant committed an assault upon the person he arrested." (Emphasis in original.)

Here, the evidence presented demonstrates that the defendant lived with M for several months before the events of February 28, 1997. M suffered a previous drug and alcohol problem during part of which time she was a prostitute and Dziemkiewicz was her procurer. At trial, M claimed, and Dziemkiewicz disputed, that he had abducted and raped her. On February 28, 1997, the defendant tried calling M several times and when he could not reach her, he returned home to find the door to their residence open, the television on, their money undisturbed, and an uneaten sandwich and a cup of coffee on the dining table. All of those facts could lead a reasonable person to infer that M's departure from the premises was unplanned and precipitous.

Additionally, the defendant notified the West Haven police. After reporting to the police that M was missing, the defendant went looking for M but could not find her. M called the defendant the following day and advised him that Dziemkiewicz had abducted and raped her. Both M and the defendant again called the West Haven police. On March 5, 1997, the defendant saw Dziemkiewicz in New Haven and ultimately stopped him. All of those facts establish a legally sufficient factual predicate for the defense of justification by virtue of making a citizen's arrest and, therefore, the defendant was entitled to have the jury decide and determine that defense.

Whether the defendant used unreasonable force under the circumstances also is a question for the jury to decide. See *State* v. *Hallowell*, 61 Conn. App. 463, 470, 766 A.2d 950 (2001) (whether state disproved defense of justified use of force is question of fact for jury). We, as a reviewing court, do not sit as a seventh juror. We conclude that, as a matter of law, the evidence presented at trial warranted an instruction on the defense of justification on the theory that the defendant was effecting a citizen's arrest and, therefore, the court

improperly denied the defendant's request for such an instruction. The defendant is entitled to a new trial.

## II

We now turn to the defendant's claims that (1) the evidence presented at trial was insufficient to sustain his conviction of "knowingly" having a knife in a motor vehicle in violation of § 29-38, and (2) the court improperly refused to sever the charge of having a weapon in a motor vehicle from the other charges in the information.

## A

The defendant first claims that the evidence presented at trial was insufficient to sustain his conviction of knowingly possessing a knife in a motor vehicle. Specifically, he argues that "there is a reasonable doubt regarding whether [he] 'knowingly' possessed the knife," and the evidence was insufficient to prove beyond a reasonable doubt that he was in exclusive possession of the vehicle in which the knife was found because the vehicle was registered in his father's name. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . When viewing evidence that could lead to contrary inferences, the jury may make inferences consistent with guilt and is not required to only make inferences consistent with innocence." (Citation omitted; internal quotation marks

omitted.) *State* v. *Price*, 61 Conn. App. 417, 425–26, 767 A.2d 107, cert. denied, 255 Conn. 947, 769 A.2d 64 (2001).

After reviewing the entire record, we conclude that the jury had sufficient evidence before it to conclude that the defendant knowingly possessed a knife in the vehicle that he operated or occupied. First, the defendant misconstrues the intent of § 29-38. The statute does not require the state to prove that the defendant possessed the knife in the vehicle; it is sufficient for the state to prove beyond a reasonable doubt that the defendant knew that the knife was in the vehicle. "The clear intent of § 29-38 is to make it a crime to have a weapon in a motor vehicle, and [t]he statute is not concerned with possession or ownership of a weapon, but rather aims to penalize those who know that there is a weapon inside a motor vehicle." (Internal quotation marks omitted.) *State* v. *Owens*, 25 Conn. App. 181, 187–88, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991).

Notwithstanding the defendant's further argument that the vehicle he was operating was registered in his father's name, the evidence in the record shows that the defendant was operating the vehicle on March 5, 1997, and that he was the sole occupant of the vehicle. Furthermore, the defendant had been operating the vehicle for several months prior to March 5, 1997. We conclude that this evidence was sufficient for the jury to conclude, as it did, that the defendant knew the knife was in the vehicle.

B

The defendant also claims that the court's denial of his motion to sever the weapon charge from the charges of assault in the first degree and attempt to commit assault in the first degree resulted in substantial prejudice or injustice because the latter charges alleged bru-

tal or shocking conduct by the defendant. We do not agree.

The following additional facts are necessary for the resolution of the defendant's claim. After speaking with several witnesses at the scene, Goad, the New Haven police officer, learned that the defendant was the operator of the still-running vehicle, a small Chevrolet Celebrity wagon. At some point during his investigation of the scene, Goad approached the unoccupied vehicle, checked the interior before shutting off the engine, and noticed a large knife in the well between the seat and the driver's side door.

On appeal, the defendant has the burden of proving that substantial prejudice or injustice resulted from the court's denial of the motion to sever. *State* v. *Chance*, 236 Conn. 31, 42, 671 A.2d 323 (1996). "Substantial prejudice is more than disadvantage . . . . In this context, prejudice means more than just a better chance of acquittal at a separate trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 25, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997). "Only when joinder will work a substantial injustice should a trial court sever the charges." (Internal quotation marks omitted.) Id., 24. "Whether to grant a severance, however, is a decision committed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal absent manifest abuse." *State* v. *Chance*, supra, 42.

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the

charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Delgado*, 243 Conn. 523, 532–33, 707 A.2d 1 (1998).

We conclude that the defendant has failed to meet his heavy burden of demonstrating that the denial of his motion to sever resulted in substantial injustice. In *State* v. *Delgado*, supra, 243 Conn. 523, our Supreme Court did not find substantial injustice where the trial court refused to sever the charge of manslaughter from the charge of risk of injury to a child. In that case, although the court determined that the injuries, including death, inflicted upon a sixteen month old victim with Down's syndrome were indeed shocking,[17] it did not find that "joinder of the counts seriously prejudiced [the defendant's] defense of the manslaughter count." Id., 534. We cannot say that the injuries or manner in which the defendant in this case inflicted the injuries on Dziemkiewicz were any more shocking or brutal.

The defendant further argues, however, that the prosecution "sought to link the charge of [p]ossession of a [w]eapon in a [m]otor [v]ehicle to the more serious assault and attempted assault charges, although there was no evidence that the knife was used or its use contemplated in the alleged assault and, in fact, there was no evidence that the knife ever left the vehicle while the alleged attempted assault occurred outside

---

[17] The victim's injuries included bruising over both eyes and on her cheek, neck and chest, a cut on the upper lip, bleeding behind the eyes, a fractured skull with associated bleeding within the brain and "a healing fracture of the victim's right upper leg that would have been caused by a 'tremendous amount of force.' " *State* v. *Delgado*, supra, 243 Conn. 529.

the vehicle on a porch . . . ." The defendant is referring to a single question that the prosecution posed to him on cross-examination.[18] We cannot say that the comment unto itself so prejudiced the rights of the defendant that the court improperly denied his motion to sever. Moreover, the court's jury instructions cured any prejudice that might have occurred. The court clearly explained that each count was a separate offense and the jury was to consider each offense individually. The court further charged that it would be the jury's "duty to consider the evidence relating to each one of those charges separately, although a lot of the evidence does overlap. . . . [Y]ou consider the evidence separately. Consider each charge separately . . . ." We conclude, therefore, that the court did not abuse its discretion in denying the defendant's motion to sever.

The judgment is reversed as to the conviction of attempt to commit assault in the first degree and the case is remanded for a new trial on that offense. The judgment of conviction of having a weapon in a motor vehicle is affirmed.

In this opinion the other judges concurred.

---

[18] The following colloquy occurred:

"Q. Sir, wasn't your real intent after you knocked Mr. Dziemkiewicz down with the bat to take this knife, state's exhibit fourteen, and finish the job?

"A. Absolutely not."